The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY, et
al., Appellants,

v.

Robert E. SMITH, Appellee.

No. 5764.

Court of Civil Appeals of Texas,
Waco.

Feb. 27, 1978.

Rehearing Denied April 6, 1978.

Joe Bruce Cunningham, Hudson, Keltner, Smith, Cunningham & Payne, M. Hendricks Brown, Brown, Crowley, Simon & Peebles, Fort Worth, for appellants.

David H. Burrow, Helm, Pletcher, Hogan & Burrow, Houston, for appellee.

## OPINION

JAMES, Justice.

This is a suit by a railroad employee against his employer under the Federal Employers Liability Act, which suit also involves other defendants.

Plaintiff-Appellee Robert E. Smith, a brakeman and sometimes conductor, sued his employer, The Atchison, Topeka and Santa Fe Railway Company (hereinafter called "the Santa Fe"), the Erath Fertilizer Company, Inc. (hereinafter called "Erath Fertilizer") and Farmers Milling Company, Inc. (hereinafter called "Farmers Milling") for personal injuries sustained by Smith in the course and scope of his employment as an employee of the Santa Fe on or about October 7, 1974. The Santa Fe filed a third party cross-action against Defendant-Appellants Borden, Inc., Erath Fertilizer and Farmers Milling for contractual indemnity growing out of the breach of certain lease agreements more particularly hereinafter discussed, as well as for common law indemnity resulting from the negligence of said Appellants.

Trial was had to a jury which found:

(1) Erath Fertilizer was guilty of negligence in the following three particulars, each of which was a proximate cause of Plaintiff-Appellee Smith's injuries, to wit:

(A) In permitting fertilizer to accumulate on the ground near the railroad track;

(B) In failing to pick up the fertilizer from the ground after completing the unloading operation; and

(C) In failing to make an inspection of the area after unloading fertilizer.

(1A) Farmers Milling was likewise found to be negligent upon the same three grounds hereinabove attributed to Erath Fertilizer, each of which was a proximate cause of Smith's injuries.

(2) The jury failed to find that Plaintiff Smith failed to keep a proper lookout; in other words, by doing so, the jury acquitted Smith of any contributory negligence.

(3) This was a proximate cause issue conditionally submitted upon an affirmative answer to (2), which was not necessary to be answered, and was not answered.

(4) The Santa Fe failed to provide a safe place to work for its employees,

(5) Which was a proximate cause of the occurrence in question.

(6) The jury failed to find that Smith's injuries were solely due to the Santa Fe's failure to furnish Smith a safe place to work.

(7) The jury failed to find that Smith's injuries caused solely by the acts and omissions of Erath Fertilizer in permitting fertilizer to accumulate and remain on the ground near the railroad track.

(8) Farmers Milling failed to keep a space of six feet from the nearest rail of the railroad track entirely clear of material.

(9) Erath Fertilizer failed to keep a space of six feet from the nearest rail of the railroad track entirely clear of material.

(10) In answer to the damage issue, to compensate Smith for his past and future physical pain and mental anguish, his past lost earnings, and his future loss of earning capacity, the jury answered $150,000.00.

(11) In answer to the comparative negligence issue, the jury found Erath Fertilizer to be 37½% to blame, Farmers Milling to be 37½% to blame, and the Santa Fe to be 25% to blame.

After the jury verdict the trial court entered judgment in favor of Plaintiff Smith allowing him recovery in the amount of $150,000.00 against the Santa Fe, Erath Fertilizer, and Farmers Milling, jointly and severally; then the Santa Fe was allowed recovery of judgment over against Borden, Erath Fertilizer, and Farmers Milling, jointly and severally, in the amount of $150,000.00. Costs were assessed jointly and severally against Smith, the Santa Fe, Borden, Erath Fertilizer, and Farmers Milling.

In this appeal the Santa Fe is both an Appellant and an Appellee, being an Appellant insofar as the judgment against it (the Santa Fe) is concerned, and being an Appellee insofar as it (the Santa Fe) was awarded judgment over against the three cross-defendants hereinabove named.

Appellants Borden, Erath Fertilizer, and Farmers Milling appeal from the trial court's judgment. After careful consideration of all of the Appellants' points of error and contentions, we overrule same and affirm the trial court's judgment.

In a sole point of error as an Appellant, the Santa Fe asserts there is no evidence to support the jury's findings in answer to special issues 4, 5 and 11, wherein the jury found (4) that the Santa Fe failed to provide a safe place to work for its employees, (5) which was a proximate cause of the occurrence in question, and (11) that the Santa Fe was 25% to blame for the accident. We overrule these contentions.

Appellants Borden, Erath Fertilizer, and Farmers Milling assail the trial court's judgment upon twenty-two points of error which assert in effect the following contentions:

(1) The evidence is legally and factually insufficient to support the jury's findings of negligence upon the part of Erath Fertilizer and Farmers Milling in permitting fertilizer to accumulate on the ground near the railroad track, in failing to pick up the fertilizer after completing the unloading operations, and in failing to make inspections of the area after unloading operations.

(2) The trial court erred in its submission of the above-stated issues inquiring into the negligence of Erath Fertilizer and Farmers Milling and should have disregarded such issues for the asserted reason that such

issues assumed that the occurrence took place on property under the control of Erath Fertilizer or Farmers Milling, and assumed that Erath Fertilizer was responsible for the fertilizer being on the west side of the track.

(3) That neither Erath nor Farmers owed any duty to Smith because he was a mere licensee and was not performing any service for either Erath or Farmers on the occasion in question; the trial court erred in assuming that Smith was an invitee when it was Plaintiff Smith's burden to secure a jury finding that he was an invitee; the trial court erred in refusing to submit Appellants' requested issues inquiring whether Smith was walking on any property under the control of Appellants at the time of the accident, or was performing any service beneficial to Erath, Farmers, or Borden.

(4) The trial court erred in entering any judgment against Borden, there having been no findings of negligence on Borden's part or testimony concerning Borden's operations.

(5) The trial court erred in awarding the Santa Fe indemnity against Erath, Farmers, and Borden because the "side track" agreements respectively applicable to such Appellants are ambiguous and unenforceable as a matter of law; and alternatively, if indemnity is allowed then under the terms of such side track agreements the Santa Fe would be entitled to only 50% indemnity in view of the fact that the Santa Fe was also found to be negligent.

(6) The side track agreements for indemnity are unenforceable because the Santa Fe thereby unlawfully attempted by indemnity contract to exempt itself from the Federal Employers' Liability Act, in violation of Section 55 of Title 45, U.S.C.A., the Federal Employers' Liability Act.

(7) The trial court erred in refusing to submit certain special issues requested by Appellants concerning a drainage ditch near the area where Smith fell, inquiring whether the Santa Fe was negligent in permitting such drainage ditch to be open, and whether such negligence was the sole cause of Smith's injuries.

We are of the opinion that all of Appellants' points and contentions are without merit, and are respectfully overruled.

On October 7, 1974, at about 10 P.M. Plaintiff-Appellee Smith was injured when he slipped on fertilizer and fell on a rail. The injury occurred on railroad tracks leading to Erath Fertilizer and Farmers Milling premises located near the Santa Fe railroad depot at Stephenville, Texas, in Erath County. At the time of the accident, Smith was working as a brakeman for the Santa Fe.

The track upon which the injury occurred runs in a general north-south direction, and is a spur track (or side track) used for loading and unloading railway cars as opposed to a track used for through traffic.

At the time of the accident in question, Farmers Milling was in possession of premises consisting of 10,710 square feet located on the east side of the track upon which the accident occurred, pursuant to a lease from the Santa Fe. Said lease contained indemnity and other provisions more particularly hereinafter discussed.

On April 18, 1967, the Santa Fe leased a tract to The Borden Co. consisting of 26,828.2 square feet which adjoined the Farmers Milling track on the north, and which Borden premises were also located on the east side of the track where Smith was injured. Paragraph 11 of the lease from the Santa Fe to Borden provided in effect that lessee (Borden) was not permitted to sublet, assign, or transfer the lease or any interest therein without the written consent and approval in each instance by Lessor (Santa Fe). Nevertheless, in violation of this covenant with Santa Fe, Borden subleased or assigned the said premises to Erath Fertilizer for a ten-year period by instrument dated August 9, 1971, without the knowledge or consent of Santa Fe, and Santa Fe had no knowledge of such assignment until a considerable period of time after Smith's accident. At all times material to this controversy, Erath Fertilizer was in possession of the premises leased to Borden. Erath paid its rent to Borden, and Borden

continued to pay its rent to the Santa Fe. Paragraph 19 of the lease from Santa Fe to Borden provided: "All the covenants and agreements of Lessee herein contained shall be binding upon the ____ successors and assigns of Lessee, and shall inure to the benefit of the successors and assigns of Lessor."

Shortly before the accident in question, Plaintiff-Appellee Smith was directed by a switch list to take a railroad car, destined for Farmers Milling, out of the train and "spot" that car on the side track located near Farmers Milling. Smith noticed a car which was not identified on his switch list on this side track located nearby Farmers Milling and Erath Fertilizer, whereupon he walked toward this unidentified car in order to see whether or not it was completely unloaded. If it had been completely unloaded, then he intended to move it out of the way so that he could spot the railroad car as per his switch list instructions. Smith walked toward the unidentified car on the west side of the track, because an auger, used for unloading fertilizer, was on the east side of said track. When he reached the area where Erath Fertilizer and Farmers Milling unload fertilizer, he slipped and fell, his buttocks striking the west rail of the track. At the time of this accident, Smith was thirty-six years of age, and was substantially and permanently injured as a result thereof. The amount of damages awarded by the jury to Smith is not in controversy herein.

Smith's fall took place in an area where only Erath Fertilizer and Farmers Milling unload fertilizer. Erath Fertilizer and Farmers Milling are closely related corporations. James E. Gryder, manager for both Erath and Farmers, testified that some of the same people are officers and directors of both corporations, and that all of the employees working under him (Mr. Gryder), except one, worked for both Erath Fertilizer and Farmers Milling. His testimony was that "our men" are responsible for cleaning up the fertilizer after unloading.

Prior to Smith's accident, the evidence showed that several complaints concerning the dangerous condition of the fertilizer unloading area were made to a safety supervisor for the Santa Fe and to the Santa Fe station agent at Stephenville. At least one prior complaint was forwarded to James Gryder (manager of Erath and Farmers) by the railroad.

Since it was ten o'clock at night at the time of the accident, and dark, Smith testified he was using his lantern which was supplied to him by the Santa Fe, but he could not see the fertilizer because it blended with the surrounding ground.

Erath and Farmers complain about the legal and factual sufficiency of the evidence to support the jury's findings that Erath and Farmers negligently permitted the accumulation of fertilizer near the railroad track, negligently failed to clean up the fertilizer after the unloading operation, and negligently failed to make an inspection of the area after the unloading operations. Particularly Erath and Farmers say that there is no evidence that any fertilizer was spilled on the west side of the track. Since their unloading operations were on the east side of the track, they say that any fertilizer spilled would be on the east side of the track only. Actually, there was ample evidence that Erath and Farmers spilled fertilizer on the west side of the track. Mr. Kirby Humphries, a train conductor for the Santa Fe, testified that he was familiar with Erath's and Farmers' unloading operation, and that the auger being used to unload the railway cars spilled fertilizer on both sides of the track. Likewise, George Bankhead, the station agent for the Santa Fe at Stephenville, stated he was familiar with the operations of Erath and Farmers, and he testified that fertilizer fell on both sides of the track during the unloading operations. Moreover, Smith himself testified that immediately before the accident he was walking on the west side of the track, and after falling on the west side, he had fertilizer all over him. This was corroborated by Jimmy Glen Crawford, a brakeman for the Santa Fe, who was working with Smith on the evening of the accident. Crawford testified that Smith fell on the

west side of the track and that he fell on and in fertilizer. Pictures taken by Mr. D. L. Reynolds, trainmaster for the Santa Fe on the next day after the accident showed fertilizer on the west side of the track. Mr. Gryder, manager of both Erath and Farmers, testified that Erath and Farmers were the only corporations unloading in the area. Smith testified that it was the fertilizer, and nothing else, that caused him to fall. He said that when the fertilizer gets moisture with it, that it becomes slick; that a crust often forms on the top, but underneath the crust it is slippery when you step on it; when it crusts over, the sun bleaches it and "it looks just like the rest of the ground." These facts were corroborated by James Gryder and Kirby Humphries. Gryder testified that *both* Erath and Farmers unload fertilizer in the area in question. The evidence showed that the crew of Erath and Farmers customarily moved railway cars up and down the track for their own convenience.

■ In our opinion the evidence is ample to support the jury findings that the Santa Fe failed to furnish Smith a safe place to work, which was a proximate cause of the accident, and that the Santa Fe was 25% to blame as compared to Erath and Farmers.

Without further detailing the evidence, it is undisputed that prior to Smith's accident the Santa Fe had knowledge of the dangerous condition caused by the fertilizer being spilled on the ground by Erath and Farmers, had made some effort to get Erath and Farmers to clean it up, but did not get the situation remedied.

■ Under the Federal Employers Liability Act, a railroad has the non-delegable duty to provide its employees a safe place to work even when they are required to go onto premises of a third party over which the railroad has no control. *Shenker v. The Baltimore and Ohio Railroad Co.* (1963) 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709; *Nivens v. St. Louis Southwestern Railway Co.* (5th Cir. 1970) 425 F.2d 114. In the case at bar, the Santa Fe breached its non-delegable duty to Smith in failure to furnish him a safe place to work, proximately causing his injuries. The Santa Fe's sole point of error as Appellant herein is overruled.

The next problem we are called upon to determine is what duty, if any, did Erath Fertilizer and Farmers Milling owe to Plaintiff Smith as an employee of the Santa Fe Railroad. Before we can answer this question we must first ascertain whether Smith was a licensee or an invitee. Appellants Erath and Farmers lay a great deal of stress or importance upon the question of whether Smith's accident took place on property under the control of Erath and Farmers by lease or otherwise. Appellants say Plaintiff-Appellee Smith failed to request submission of a special issue to the jury inquiring whether Smith was a licensee or an invitee.

■ The property description portion of the leases in question refer in each instance to a plat attached, and this is how we determine the property descriptions of the leased premises. Both plats show that the leased premises in question are about ten feet from the side track. In one place the Borden tract is shown to be 8½ feet from the side track. Since Smith slipped and fell upon the west rail of the railroad track, it seems clear that he actually slipped and fell upon property which was not included in the leased premises. However, we do not consider this important, because the leases clearly contemplated that the lessees had the right to load and unload goods to and from the railway cars on the side track, and did customarily and regularly do so. Their auger and other unloading equipment was positioned upon and near the Santa Fe track so as to connect with the railway cars for unloading of fertilizer. Therefore there is no question but that Erath and Farmers had control over the area where Smith was injured, as well as the Santa Fe. Here, the Santa Fe on the one hand, and Erath and Farmers on the other, had a purpose in common or mutuality of interest, since the Santa Fe was in the business of transporting fertilizer, feed, and other goods to the unloading area; and Farmers and Erath were interested in unloading the goods from the railway cars. At the time Smith

was injured, he was in the process of checking an unidentified railway car which was destined for and being unloaded by Farmers Milling, in order that he might "spot" or position another car out of the train for unloading by the Erath and Farmers crew. This being so, in our opinion, the evidence conclusively shows and establishes that Smith was on the premises at the implied invitation of Erath and Farmers, and was an invitee of said parties, and whether he slipped and fell upon leased ground or not is immaterial.

■ An "invitee" is defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant or the business of the owner or occupant or for their mutual advantage.

An implied invitation is one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property are consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interests. 65 C.J.S. Negligence, par. 63, p. 720 (1969).

■ A servant or employee of another person who enters the premises on the business of his master, in which business the master and the owner or occupant have a mutual interest occupies the status of an invitee. *Texas Power & Light Co. v. Holder* (Tyler CA 1964) 385 S.W.2d 873, 885, 886, writ refused, NRE, by the Supreme Court in 393 S.W.2d 821.

■ In view of our holding that Smith was an invitee of Erath and Farmers at the time of his injury, we come to the well-settled rule of law that an occupier owes a duty of ordinary care to make and keep the premises safe for the use of his invitees, which includes the duty to inspect the premises to discover dangerous conditions. *Smith v. Heneger* (Tex.1950) 148 Tex. 456, 226 S.W.2d 425, 431, 20 A.L.R.2d 853; *Ha-*

*lepeska v. Callihan Interests, Inc.* (Tex.1963) 371 S.W.2d 368, 378; *Scott v. Liebman* (Tex.1966) 404 S.W.2d 288, 293. This duty of an occupier has been held to apply to persons using an abutting highway to the occupier's premises and to persons on adjoining premises. See *Atchison v. Texas and Pacific Ry. Co.* (Tex.1945) 143 Tex. 466, 186 S.W.2d 228, opinion adopted; *Hernandez v. Heldenfels* (Tex.1963) 374 S.W.2d 196, 199; *Chapman v. Parking, Inc.* (San Antonio CA 1959) 329 S.W.2d 439, NRE; *Christian v. Dishongh* (Houston 14th CA 1969) 449 S.W.2d 823, no writ.

Under the record before us and the foregoing authorities, we are of the opinion and hold that Smith was an invitee as a matter of law; that Erath and Farmers owed him the occupier's duty of ordinary care to make and keep the premises safe for the use of such invitee; that by the jury's findings of negligence and proximate cause on the part of Erath and Farmers, said Appellants breached that duty, owed to Smith, and therefore Smith's judgment against Erath and Farmers is proper.

Our next problem concerns the propriety of the trial court's judgment in favor of the Santa Fe over against Cross-Defendant-Appellants Borden, Erath Fertilizer, and Farmers Milling. We are of the opinion and hold that the Santa Fe is entitled to a judgment over against all three Cross-Defendants by way of the contractual indemnity provisions contained in the leases in question; and in addition thereto, Santa Fe is entitled to common law indemnity against Erath and Farmers.

Let us first consider the pertinent indemnity provisions of the leases in question. First, the lease from the Santa Fe to Borden (later assigned to Erath Fertilizer without the Santa Fe's knowledge or consent as hereinabove pointed out), contained the following language:

"9. Lessee agrees to indemnify and save harmless Lessor against all loss, damage or expense which Lessor may sustain, incur, or become liable for, including loss of or damage to property or injury to or death of persons and fines or penalties imposed upon

or assessed against Lessor, arising in any manner out of (a) the use of the Premises or Improvements by Lessee, (b) *any breach by Lessee of the terms, covenants or conditions in this instrument contained,* or (c) the sole or contributing acts or omissions of Lessee or the employees, agents, patrons or invitees of Lessee in, on or about the Premises or Improvements, except that if Lessor shall participate in any such contributing acts or omissions, then the loss, damage or expense arising therefrom shall be borne by the parties hereto equally.

"10. *Lessee shall at all times keep a space of six (6) feet from the nearest rail of any railroad track entirely clear of structures, material and obstructions of every sort* and shall observe an overhead clearance of not less than twenty-five (25) feet above the top of rail; provided, however, if by statute or order of competent public authority different clearances shall be required, then Lessee shall strictly comply with such statute or order. *Irrespective of anything in Section 9 hereof contained, in case of a breach of the obligations contained in this Section 10, or of any of them,* Lessee assumes and agrees to indemnify Lessor against all liability for loss, damage, injury and death resulting therefrom, and to reimburse Lessor for any sums which Lessor may have been required to pay in the way of damages, fines, penalties or other expense resulting, in whole or in part, from the failure of Lessee to comply with any of the provisions hereinabove in this Section 10 contained." (emphasis supplied).

In paragraph 19, as stated before, Erath Fertilizer as assignee of Borden became bound concerning the covenants and agreements contained in the Borden lease.

The evidence clearly shows, and the jury found, that Erath Fertilizer violated the terms of paragraph 10 of the Borden lease by failing to keep a space of six feet from the nearest rail of the railroad track entirely clear of material. This jury finding is not challenged by Appellants, and the record is replete with evidence showing the spilling of fertilizer in the middle of, and on both sides of the track.

In the case at bar, Santa Fe as indemnitee was also found by the jury to be negligent and 25% to blame for the accident.

■ Our Supreme Court has held that the general rule is that a contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms; that broad general statements of the indemnity obligation are not sufficient to protect an indemnitee against his own negligence. *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.* (Tex.1972) 490 S.W.2d 818 at page 822. However, *Fireman's Fund* further points out three exceptions to this general rule, the first of which is applicable to the case at bar. This exception is, to wit, "agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality, as in *Mitchell's Inc. v. Friedman*" (Tex.1957) 157 Tex. 424, 303 S.W.2d 775, at page 779. Also see *Houston & T.C. Ry. Co. v. Diamond Press Brick Co.* (Comm.App.1920) 111 Tex. 18, 222 S.W. 204, opinion approved, on rehearing at 226 S.W. 140.

■ In the case at bar, Borden as original lessee remained liable on the lease, 36 Tex.Jur.2d, "Landlord and Tenant," par. 239, p. 83, as was Erath Fertilizer as assignee of the lease by the express terms of said original lease.

■ In our opinion the indemnity provisions in the Borden lease are clear and unequivocal to indemnify the Santa Fe against its own negligence; however, in any event the Santa Fe was properly indemnified by Borden and Erath Fertilizer under the exception to the general rule enunciated by *Fireman's Fund, Mitchell's Inc. v. Friedman,* and *Houston & T.C. Ry. Co.* hereinabove cited. We therefore hold that Bordens and Erath Fertilizer were liable to the Santa Fe on contractual indemnity.

Santa Fe's lease to Farmers Milling contains this pertinent language:

"9. *Lessee shall at all times keep a space of six (6) feet from the nearest rail of any railroad track entirely clear of structures, material and obstructions of every sort* and shall observe an overhead clearance of not less than twenty-five (25) feet above the top of the rail; _ _ _ _.

"10. Lessee agrees to indemnify and save harmless Lessor against all loss, damage or expense which Lessor may sustain, incur or become liable for, including loss of or damage to property or injury to or death of persons and fines or penalties imposed upon or assessed against Lessor, arising in any manner out of (a) the use of the Premises or Improvements by Lessee, (b) *any breach by Lessee of the terms, covenants, or conditions in this instrument contained, or* (c) the sole or contributing acts or omissions of Lessee or the employees, agents, patrons or invitees of Lessee in, on or about the Premises or Improvements, except that if Lessor shall participate in any such contributing acts or omissions, then the loss, damage or expense arising therefrom shall be borne by the parties hereto equally; provided, however, that Lessee hereby assumes the risk of, and agrees to indemnify Lessor against liability for, loss of or damage to the property of Lessee or of others upon the premises (except any rolling stock or shipments in the course of transportation and except any property of Lessor or others placed or kept on the Premises pursuant to paragraph 2 hereof) due to fire communicated from locomotives while being operated by Lessor upon any tracks within or in the vicinity of the Premises, regardless of Lessor's negligence, if any." (emphasis supplied).

Appellants assert that the language in the Farmers Milling lease is ambiguous and unenforceable. We do not agree. Subparagraph (b) of paragraph 10 hereinabove quoted specifically indemnifies Lessor (the Santa Fe) against "any breach by Lessee of the terms, covenants, or conditions in this instrument contained."

The jury found, and this finding is not challenged by Appellants, that Farmers Milling breached a covenant of the lease by failing to keep a space of six feet from the nearest rail of the railroad track entirely clear of material. Therefore we are of the opinion and hold that Farmers Milling is liable to the Santa Fe under the doctrine of contractual indemnity under the rule hereinabove cited from *Fireman's Fund, Mitchell's Inc. v. Friedman*, and *Houston & T.C. Ry. Co. v. Diamond Press Brick Co., supra.*

Additionally, Erath Fertilizer and Farmers Milling are each liable to the Santa Fe under the well-settled doctrine of common law indemnity among joint tortfeasors enunciated by our Supreme Court, which rule is stated as follows: "Where the injury forming the basis for the judgment against the joint tort-feasors *results from a violation of a duty which one of the tortfeasors owes to the other*, the latter, at common law, is entitled to contribution or indemnity from the former." (emphasis supplied). *Renfro Drug Co. v. Lewis* (Tex. 1950) 149 Tex. 507, 235 S.W.2d 609 at page 623; *Austin Road Co. v. Pope* (Tex.1949) 147 Tex. 430, 216 S.W.2d 563, at page 565; *Wheeler v. Glazer* (Tex.1941) 137 Tex. 341, 153 S.W.2d 449, at page 451; *City of Amarillo v. Stockton* (Tex.1958) 158 Tex. 275, 310 S.W.2d 737, at page 739. Also see *Houston Belt & Terminal Ry. Co. v. Weingarten* (Houston 1st CA 1967) 421 S.W.2d 431, at page 437, NRE.

In the instant case, Erath Fertilizer and Farmers Milling were joint tort-feasors along with the Santa Fe insofar as Plaintiff-Appellee Smith was concerned. However, in addition to this, at the same time Erath Fertilizer and Farmers Milling also breached a duty which they owed to the Santa Fe, by failing to keep a space of six feet from the nearest rail of the railroad track entirely clear of material, in clear violation of the express terms of their respective leases. Therefore, the trial court properly awarded the Santa Fe judgment over against Erath and Farmers under this doctrine of common law indemnity.

Appellants have other points and contentions, all of which we have carefully considered, and all of which we overrule as being without merit.

Judgment of the trial court is accordingly affirmed.

AFFIRMED.

HALL, Justice, concurring.

I do not agree with the majority's holding that the record shows as a matter of law that the area where Smith was injured was equally controlled by Santa Fe and its lessees, or that the record otherwise shows without dispute that Smith was the invitee of the lessees. However, it is my view that those questions are immaterial. The record does show without contradiction that Smith was on land controlled by Santa Fe when he was injured, and that the premises under lease by the lessee-defendants adjoined the property upon which Smith was injured. Under those circumstances and the jury's findings the lessees are liable for Smith's damages without regard to the relationship between them and Smith. This is so because of the rule that a possessor of land is under the duty to exercise ordinary care in the use of his property to avoid injuring others on adjoining property. See *Texas-Louisiana Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302 (1936); *Atchison v. Texas & P. Ry. Co.*, 143 Tex. 466, 186 S.W.2d 228 (1945); Restatement, Law of Torts (2d ed. 1965) §§ 371, 386; Prosser, Handbook of the Law of Torts (1941), § 76.

With the exception stated, I concur with the majority's opinion and order overruling motion for rehearing. I also concur in the affirmance of the trial court's judgment.