**ALLRIGHT, INC., Appellant,**

**v.**

**Carolyn PEARSON, Appellee.**

**No. 01–84–0525–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 24, 1986.

Rehearing Denied May 22, 1986.

George M. Bishop, Chris A. Stacy, George M. Bishop & Associates, Houston, for appellant.

Randy Schaffer, Randy Schaffer, P.C., Houston, for appellee.

Before DUGGAN, JACK SMITH and HOYT, JJ.

ON MOTION FOR REHEARING

DUGGAN, Justice.

Our opinion issued January 16, 1986, is withdrawn and the following is substituted. Appellee Carolyn Pearson's motion to correct judgment is granted; appellant Allright, Inc.'s motion for rehearing is overruled.

This is an appeal from a judgment entered on a jury verdict in a negligence action awarding actual and exemplary damages. The appellee, Carolyn Pearson, was a customer of the Rice Rittenhouse parking garage, which was operated by the appellant, Allright, Inc., in downtown Houston. On July 8, 1980, Pearson was robbed at gunpoint, and her automobile was stolen from her inside the unattended, multistory garage.

In answer to special issues, the jury found that Allright failed to provide adequate security on the premises (Special Issue No. 2), failed to provide a safe and secure place for Pearson to park her car at the garage (Special Issue No. 5), and failed to warn Pearson that Allright would not provide security after a certain time of day (Special Issue No. 8). Each of these omissions was found to be both negligence (Special Issues No. 3, 6, and 9), and a proximate cause of the robbery incident (Special Issues No. 4, 7, and 10), and a heedless and reckless disregard of the rights of others affected by Allright's action (Special Issue No. 11). The jury further found that Pearson signed a written contract with Allright on or about June 30, 1980, for her parking in the month of July 1980 (Special Issue No. 12); that Pearson did not read and understand the entire contract before the date of the robbery (Special Issue No. 13); and that Allright had actual or constructive knowledge of a dangerous condition existing on the premises on or before the date of the robbery (Special Issue No. 14).

In addition to property damages to her automobile in the amount of $1,578.10, the jury found that Pearson suffered damages for past physical pain and past and future mental anguish in the amount of $36,000, and awarded exemplary damages in the amount of $50,000. From the judgment entered on the verdict for the plaintiff, Allright urges 62 points of error.

Allright's first three points of error complain of Pearson's closing argument to the jury. These points assert that counsel made statements of fact not shown by the record, appealed to the jury's passion and prejudice, instructed the jury as to the effect of its answers, and made side bar remarks and "improper jury argument." Allright argues that all of this was cumulatively inflammatory and incurable by instruction, and probably caused the rendition of an improper verdict.

■ However, Allright urges its complaints as conclusions, and does not cite specific statements that it complains of. Its brief simply refers us by page number to some 37 pages of the argument, pointing to almost every page as containing some offending argument. This does not meet the burden of showing specific argument that constitutes reversible error.

Allright objected on only four occasions during jury argument; the court did not rule on three of these, and overruled the fourth objection and its accompanying motion for mistrial. That instance of argument and ruling was as follows:

PEARSON'S ATTORNEY: If you don't think your verdict in this case is going to make waves in the parking garage community, you're dead solid wrong.

ALLRIGHT'S ATTORNEY: Objection, Your Honor.

PEARSON'S ATTORNEY: It's on the issue of punitive damages, Your Honor.

THE COURT: State your objection from the Bar out loud.

ALLRIGHT'S ATTORNEY: Your Honor, counsel is instructing the Jury of the effect of their answers. Defendant moves for mistrial, Your Honor.

THE COURT: Motion for mistrial is denied. Move along. You have three minutes left.

■ The general rule concerning improper jury argument is that any impropriety of

allegedly offensive statements is waived by the failure to make proper and timely objection. *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979). The exception occurs when the argument is so prejudicial that an instruction to disregard would not have removed the prejudice produced. *Southern Pacific Co. v. Hubbard,* 156 Tex. 525, 297 S.W.2d 120, 125 (1956). Instances of incurable harm from improper argument are rare. The complaining party must first prove: (1) an error (2) that was not invited or provoked, (3) that was preserved by proper objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. *Standard Fire Insurance Co.,* 584 S.W.2d at 839. To be incurable or harmful error, the complainant must show that the probability is greater that the improper argument caused harm than that the verdict was grounded on proper proceedings and evidence. The factors to be examined in making such a determination include: (1) whether the argument by its nature, degree, and extent constituted harmful error, i.e., how long the improper argument continued, whether it was repeated or abandoned, and whether there was cumulative error; (2) the argument's probable effect on a material finding; and, (3) an evaluation of the whole case from voir dire through closing argument. *Id.* at 839–40. None of these requirements is shown. Allright's points of error one, two, and three are overruled.

In its points of error four, five, and six, Allright asserts that it had no duty to provide security on the garage premises or a safe and secure place to park, or to warn that it provided no security after a certain time of day. Accordingly, Allright argues, the court erred in rendering judgment based on the finding of breaches of such duties.

Allright concedes in oral argument that Pearson was an invitee on the garage premises, a person present in response to Allright's express or implied invitation for mutually beneficial business purposes. *See Atchison, Topeka and Santa Fe Railway Co. v. Smith,* 563 S.W.2d 660, 666 (Tex.Civ. App.—Waco 1978, writ ref'd n.r.e.). The operator of a premises has a duty to an invitee to exercise ordinary care to keep the premises in a reasonably safe condition so that the invitee will not be injured. This includes the duty to inspect the premises to discover dangerous conditions. *Genell, Inc. v. Flynn,* 163 Tex. 632, 358 S.W.2d 543, 546 (1962); *Atchison, Topeka and Santa Fe Railway Co.,* 563 S.W.2d at 666. The operator of a premises is charged with knowledge of any dangerous condition that a reasonable inspection would have revealed, if a reasonably prudent person should have foreseen a probability that the condition would result in injury to another. *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 754 (Tex.1970); *H.E. Butt Grocery Co. v. Newell,* 664 S.W.2d 116, 118 (Tex.App.—Corpus Christi 1983, no writ).

A business operator has the same duty of reasonable care to foresee and prevent a business invitee from being injured by the criminal acts of third persons. *Walkoviak v. Hilton Hotels Corp.,* 580 S.W.2d 623 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) (hotel held to owe duty of reasonable care to provide adequate security to a guest, who was beaten and robbed going to his car on parking lot at night); *Morris v. Barnette,* 553 S.W.2d 648 (Tex. Civ.App.—Texarkana 1977, writ ref'd n.r.e.) (all-night washateria without attendant held to owe duty to a female customer, who was beaten and raped, to effectively warn of danger or provide employees to reasonably protect invitees); *Eastep v. Jack-In-The-Box, Inc.,* 546 S.W.2d 116 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.) (restaurant held to owe duty of reasonable care to invitee customer who was beaten on the premises).

Allright cites and relies on several decisions to show it had no duty to Pearson; each is distinguishable. A plaintiff under the Texas Tort Claims Act in *State v. Tennison,* 509 S.W.2d 560 (Tex.1974), was found to be a licensee, not an invitee. Another plaintiff, who had been dragged onto an apartment complex premises and raped

in an empty apartment, was technically a trespasser, according to the Dallas Court of Appeals in *Nixon v. Mr. Property Management Co.*, 675 S.W.2d 585 (Tex. App.—Dallas), *rev'd and remanded on other grounds*, 690 S.W.2d 546 (Tex.1985). Although the plaintiffs in *Castillo v. Sears, Roebuck & Co.*, 663 S.W.2d 60 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.), initially encountered and exchanged threats with their assailants inside Sears' premises, where Sears had full-time security employees on duty to protect patrons, the later altercation and the plaintiff's injuries occurred outside Sears' store in a mall area. Thus, Sears was found to have breached no duty. In *Campos v. South Texas Beverage Co.*, 679 S.W.2d 739 (Tex.App.—El Paso 1984, no writ), a restaurant patron was accidentally shot and killed by a police officer during a robbery of the restaurant. While the court held that the restaurant owed its customers, who were business invitees, a duty of reasonable care, it also ruled that the restaurant had no duty to discover an "undercover," or covert, police stakeout (which was in fact unknown to restaurant personnel), and was not chargeable with constructive knowledge of the dangerous condition.

By contrast, in *Morris*, 553 S.W.2d 648, where a patron of an unattended washateria was raped and beaten at night, the court of appeals spoke to the washateria operator's duty of foreseeability:

> [T]he operator of a washateria business who, by reason of location, mode of doing business, or observation or past experience, should reasonably anticipate criminal conduct on the part of third persons, either generally or at some particular time, has a duty to take precautions against it and to provide an effective warning or a reasonably sufficient number of servants to afford reasonable protection to invitees on the premises.

*Id.*, at 650.

The fact that an event has not previously occurred is neither conclusive on the issue of its foreseeability nor dispositive of a duty to reasonably anticipate its occur-

rence. *Parking, Inc. v. Dalrymple*, 375 S.W.2d 758 (Tex.Civ.App.—San Antonio 1964, no writ); *McAllen Kentucky Fried Chicken No. 1, Inc. v. Leal*, 627 S.W.2d 480 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).

We reject Allright's contentions that it had no duty to provide security, or a safe and secure place to park, or to warn when it provided no security. Allright's points of error four, five, and six are overruled.

Allright's next 20 points of error are evidentiary. The jury found that Allright failed to provide adequate security, failed to provide a safe and secure place to park, and failed to warn Pearson that it provided no security after a certain time of day. These omissions were found to constitute negligence, and each was a proximate cause of the occurrence in question. Allright asserts that each of these findings is supported by no evidence or insufficient evidence, or is against the great weight and preponderance of the evidence.

On a complaint of no evidence to support a jury verdict, the court considers only the evidence and reasonable inferences therefrom that, viewed in the most favorable light, supports the jury finding. All evidence or reasonable inferences to the contrary must be rejected. When more than a scintilla of evidence is found by the court, a "no evidence" point of error must be overruled. *See Tomlinson v. Jones*, 677 S.W.2d 490, 492 (Tex.1984).

In determining whether the evidence is factually sufficient to support the jury's verdict, the court considers and weighs all the evidence, whether for or contrary to the verdict. To determine the evidence insufficient, the court must find the evidence supporting the verdict so weak, or so against the great weight and preponderance of the evidence, as to be manifestly unjust, and a new trial is required. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Carolyn Pearson testified that she worked at a downtown Houston lawfirm and had parked for 15 months at another nearby parking garage, which had a full-time attendant, until that garage closed for renovation. On June 30, 1980, she went to the Rice Rittenhouse garage, operated by Allright, Inc., after she saw a sign indicating that parking was available. She noted that a centrally located attendant's booth was close to the single ramp leading to the upper levels, such that an attendant situated in the booth could see anyone entering the garage or going up or down the ramp.

Pearson spoke with Allright's garage manager, Charlie Clark, about obtaining parking on a monthly basis. Clark advised her that the elevator did not work, and that she would have to walk up and down the ramp. Pearson asked Clark how late he kept the garage open, and he replied that he kept it open until 8:00 p.m. Clark did not mention that he left at 5:30 p.m., and there were no signs indicating that the attendant left at any certain time. Pearson testified that she understood from her conversation with Clark that the garage was open until 8:00 p.m., and that because of her concern for her safety, she would not have parked there if she had known there would be no attendant present after 5:30 p.m.

Pearson gave Clark a check for $50 to park during July, and Clark handed her a hang tag, obtained her signature on part of it, tore the tag in half, kept the portion signed by Pearson, and gave her the other portion to attach to her car's rear view mirror.

Pearson first parked at the Rice Rittenhouse garage the next day, July 1, 1980. She arrived at 8:15 a.m. and parked at the first available place, which was on the seventh level. She returned to the garage at 5:15 p.m., and observed the attendant in the booth.

On July 2, 1980, she arrived at 8:30 a.m. and again parked on the seventh level. She had to work late that day, and did not return to the garage until 7:15 p.m. No attendant was present, but all entrances to the garage were open, and cars were still parked on the ground level and each higher level she passed as she walked up the ramp. Her own car and two others were still on the seventh level when she arrived. As she approached her car, she heard a shuffling noise behind her, turned, and saw a young man running toward her. He was in his twenties, dressed in a T-shirt, jeans, and tennis shoes, and was sweating profusely. She panicked and tried to get to her car, but the man pulled a gun and ordered her to walk to her car, where he made her open the door. He then took her keys and purse, got into the car, ordered her to get behind the car, and drove away. Pearson hid behind a pillar, fearful and emotionally drained, until she could summon her strength and walk down the ramp. A businessman in his car on the fifth level drove her to the garage basement. There, a Shell Oil Company attendant employed to guard Shell company cars parked in the basement assisted her in phoning police and a friend, Sissy Gordon. Police arrived, a police report was made, and Gordon took Pearson home and stayed with her most of the night because of Pearson's fear that the assailant, who had her keys and identification, would come to her home.

Pearson did not park at the garage again, but returned to it the next day to report the robbery and request a refund. When she asked Clark why there was no attendant on duty after 5:30 p.m., Clark said that Allright did not want to pay the extra money to keep a guard on duty between 5:30 and 8:00 p.m.

In response to Pearson's request for admissions, Allright admitted that it operated the Rice Rittenhouse garage on July 2, 1980; that it provided parking space there to the public on a monthly basis (although it had no record of a contract for parking space with Pearson for July 1980); and that it did not have an attendant or security guard on the premises at the time of the robbery or during all hours that the garage was open to the public for business. Allright stated that it did not know that Pear-

son's assailant was on the premises at the time of the robbery.

Allright's supervisor of garages in Houston, Dale Hudler, testified by deposition that Allright had six multilevel garages in downtown Houston in 1980; that four of those had attendants on duty after 5:30 p.m.; that the Rice Rittenhouse garage held approximately 550 cars and had from 400 to 450 customers who paid $50 per month to park; that daily customers paid a fixed rate in advance for any time period; and that Allright knew the garage stayed full and that many of its customers were female. Hudler further testified that from the outside it was impossible to see persons on the garage's upper levels; that a single ramp was the only access to above ground levels; and that the attendant's booth afforded a clear view of all persons going up or down the ramp. He testified that the attendant left at 5:30 p.m.; that there was no attendant or security guard present from 5:30 p.m. until 8:00 p.m.; that the garage was left open until 8:00 p.m. to allow persons already parked to retrieve their cars; and that an employee from another Allright location would lock the gate at 8:00 p.m.

Photographic exhibits and testimony showed that a sign, stating that the attendant was to be paid in advance, remained in place after 5:30 p.m., even though no attendant was present.

Robert Waldhuber, a security consultant accredited as a certified protection professional by the American Association for Industrial Security, testified to the standard of care required for a multilevel, enclosed parking garage to be reasonably safe and secure for patrons. He testified that the central downtown Houston business district near Market Square, where the Rice Rittenhouse garage is located, was considered in July 1980 to be a "high crime" area; that even with attendants or security personnel, a multilevel garage facility such as the Rice Rittenhouse, with its four entrances and exits, posed security problems because of uncontrolled access; that lighting alone was inadequate to provide a mini-

mum acceptable standard of security in such a facility; and that an acceptable level of security required that there be an attendant or security guard present in the garage while it was open for operations. Waldhuber testified that as a minimum security measure, management of such a garage should post notice to patrons if no attendant is present, and include such a warning in printed customer contracts.

He testified that with the inadequate security of the Rice Rittenhouse in July 1980 —uncontrolled entrances and exits, no personnel on duty, and no notice to customers of the attendant's schedule—it was reasonably foreseeable that a person bent on robbery could enter, hide on upper levels, and lay in wait for persons coming in, whether or not such incidents had occurred in the past.

■ In its discussion of these points of error, Allright makes little reference to the record, but argues that it had no knowledge of a dangerous condition before July 2, 1980, that it had seen no previous similar acts on the premises, and that it was not foreseeable that there was imminent harm or danger to patrons on the premises. Waldhuber's testimony to the contrary, i.e., that a prudent person should have anticipated that a robbery could occur, was more than a scintilla of evidence to support the jury's findings that Allright failed to provide adequate security or a safe and secure place to park, or to warn of no attendant after certain hours, and that each such omission was negligence and a proximate cause of Pearson's robbery.

Allright's points of error 7–27 and 60–62 are overruled.

■ In its related point of error 59, Allright asserts that the danger, if any, in the garage was open and obvious, and that Pearson admitted she knew the garage was dangerous. We disagree. While Pearson testified that she appreciated that the area surrounding the Rice Rittenhouse garage was dangerous, this is not evidence that she knew it was dangerous *inside* the garage. Allright's duty of reasonable care to

provide adequate security for its invitees while on the premises would justify an invitee's assumption that the garage would be a safe place to park. Pearson testified that she was under the impression that an attendant would be present in the garage to keep out intruders or suspicious looking people, and that she would not have parked in the garage if she had known the garage was unattended after 5:30 p.m. There was no warning that the attendant would leave the garage at a certain time, and Allright's sign required that the attendant be paid in advance. When Pearson returned to the garage, it appeared to be safe, and there was nothing to indicate its dangerous condition. We find no evidence that the danger was open and obvious, and Pearson did not admit she knew of the dangerous condition. Allright's point of error 59 is overruled.

Allright's points of error 28–30 assert that the jury's finding of heedless and reckless disregard of the rights of others is supported by no evidence, insufficient evidence, or is against the great weight and preponderance of the evidence. Related points of error 53–56 urge that the jury's award of $50,000 punitive damages is supported by no evidence, insufficient evidence, insufficient findings, and no evidence concerning deemed findings of omitted issues necessary for punitive damages.

Allright argues that it did not act recklessly in failing to maintain adequate security for its invitees and that it had conducted "safety studies." It presented no evidence of such studies, however, even though one of its supervisors asserted that he "checked with a few" parking garages to see what they did to protect their customers during evening hours.

Allright further contends that the parking garage "was regularly patrolled." This may have been true during hours of operation before 5:30 p.m., but the garage supervisor admitted that the only protection in the evening came from lights. Allright's attendants, who came by at 8 p.m. to lock up, were not required to check to see whether any late or stranded patrons were still in the garage; general policy required only that the attendant wait at the gate for five to ten minutes. Allright contends that there was a guard present on the ground level of the garage at 7:15 p.m. on the night of the robbery. This is an apparent reference to a Shell Oil Company employee in the basement (not on the ground floor) of the garage. Although he helped Pearson call the police, he was not connected with Allright, and his job was only to watch the Shell company cars in the basement. He was not employed to monitor the remainder of the garage, and he had no responsibility to watch for intruders. He had no authority to stop persons from coming into the garage or going up the ramp.

■ The evidence supports the jury's finding that Allright's omissions were the result of a conscious indifference to its customers' rights or welfare. Allright's attendant told Pearson on the day after the robbery that Allright did not have anyone on duty from 5:30 to 8:00 p.m. because it did not want to pay the attendant's minimum wage salary. D.M. Carothers, Allright's founder, chairman emeritus, and consultant at the time of the robbery, freely admitted that no one was on duty after 5:30 p.m. because there was no need to have anyone present to collect money at that hour. The entire decision relating to whether an attendant would be present at Allright's garages in the evening was based on the likelihood of collecting revenue, with no apparent concern for customer safety. Carothers testified that in contracting with customers for a safe place to park, "There's a limit to it," and the limit is "when there's no longer any business being transacted at the garage."

Allright's overriding concern with revenue, as distinguished from customer safety, is sufficient basis for the jury to have concluded that it acted with heedless and reckless disregard of the rights of others. *See Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). We find the

evidence is sufficient to support the jury's award of exemplary damages. Allright's points of error 28 through 30 and 53 through 56 are overruled.

Points of error 31–35 center on Pearson's written contract for parking with Allright, and Allright's claim that its liability was limited to $100 by the terms of the contract.

The jury found that Pearson signed a written contract on or about June 30, 1980, with Allright for her parking for the month of July 1980, and that she did not read and understand the entire contract prior to the robbery. Allright urges that it should not be required to prove that Pearson read and understood the contract, and that the court should have deemed this fact to be true as a matter of law. Further, Allright alleges that there were no pleadings to support an affirmative answer, that the affirmative finding was against the great weight and preponderance of the evidence, and that the issue was evidentiary.

Allright argues that the "uncontroverted testimony at trial showed that [Pearson] signed a contract which was identical to the contract introduced as an exhibit by [Allright]." We disagree. It was never proved that Pearson signed a contract identical to the one contained on the reverse side of the hang-tag Allright offered on its bill of exceptions and attempted to introduce into evidence. Pearson testified directly that she did not sign a contract, but admitted that when Clark handed her a hang-tag, she signed a portion of it and filled in her name, address, and license number "to give them a record of who was on the premises." Clark did not point out any liability clause that might have been on the back of the hang-tag, and Pearson testified that she never read one. The portion she signed and filled in was torn off by Clark and retained by Allright, and Pearson did not know what disposition was made of it. Her attorney was told by Allright during pre-trial discovery that Allright had no record of a contract with Pearson. Carothers admitted that Allright's records that would include Pear-

son's contract had been destroyed, and Allright's attorney confirmed that those records had been "lost."

■ Allright correctly argues that a party who signs a contract of proven content is bound by its content, whether the provisions have been read or not, even though the terms limit the contractee's liability. *Allright, Inc. v. Elledge*, 515 S.W.2d 266 (Tex.1974). In the present case, however, the contents of the contract signed are in dispute. The sample hang-tag shown on Allright's bill of exceptions was never admitted in evidence. Pearson did not admit that she signed a contract containing a limitation clause. At most, there was a disputed issue whether the back of Pearson's hang-tag contained a limitation clause, and that issue was never presented to the jury. The question of whether the contract signed by Pearson contained a limitation of liability was therefore waived. *Washington v. Reliable Life Insurance Co.*, 581 S.W.2d 153, 156 (Tex.1979); Tex.R. Civ.P. 279. Allright's points of error 31–35 are overruled.

Allright's points of error 36–41 complain of the court's instruction preceding Special Issue No. 14, and of the submission of the issue itself, challenging the legal and factual sufficiency of the evidence to support the jury's affirmative answer and contending that the finding is against the great weight and preponderance of the evidence, and not supported by the pleadings.

Special Issue No. 14 asked whether Allright had knowledge of a dangerous condition existing at the garage on or before the date of the robbery. The instruction now being questioned, which preceded the issue, advised the jury that the duty to warn Pearson of dangerous conditions at the garage could arise only if Allright had knowledge of the condition, and that "knowledge can be either actual or constructive."

■ Allright failed to object at trial to the definition or the issue, and any error is therefore waived. *Sudderth v. Howard*, 560 S.W.2d 511, 515 (Tex.Civ.App.—Amaril-

lo 1977, writ ref'd n.r.e.). The definition as submitted was correct.

Allright again erroneously relies on *Tennison*, 509 S.W.2d 560, where it was held that an owner's duty to warn a *licensee* of a dangerous condition arises only where the owner or operator had actual knowledge of the condition. Here, Pearson was an invitee, not a licensee. In *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983), the Texas Supreme Court held that in cases involving the duty owed by a premises operator to an *invitee*, evidence of knowledge of premises defect can be either actual or constructive. The sufficiency of the evidence complaints are rejected for the reasons summarized in points of error 7–27. Allright's points of error 36–41 are overruled.

Point of error 42 asserts that the trial court erred in awarding Pearson the $1,578.10 cost of repairs to her car, as found in Special Issue No. 15, because no bailment was created and Allright "had no duty to [Pearson] with regard to the cost to repair her vehicle." Allright argues that no bailment was created because of the "park and lock" arrangement whereby Pearson kept her own keys and retained control over her car, citing *Allright Auto Parks, Inc. v. Moore*, 560 S.W.2d 129 (Tex. Civ.App.—San Antonio 1977, writ ref'd n.r. e.), and *Ragland v. Allright Parking, Inc.*, 559 S.W.2d 858 (Tex.Civ.App.—San Antonio 1977, no writ).

■ The cited cases are distinguishable from our case in that the plaintiffs in *Moore* and *Ragland* each relied on the presumption of negligence created by the bailor-bailee relationship, and neither produced independent proof of Allright's negligence. The two cases do not stand for the proposition that a parking lot operator can never be held liable for property damage when the customer keeps his car keys. In his concurring opinion in *Moore*, Chief Justice Cadena stated:

> I do not understand Justice Murray's opinion [ruling against bailor-customers who depended on the presumption of negligence in the bailment relationship]

as indicating that, in the absence of such relationship, the operator of a "park and lock" parking lot or garage owes no duty to take reasonable precautions to prevent the theft of a customer's car.

560 S.W.2d at 131. Pearson independently showed Allright's negligent conduct. Allright's point of error 42 is overruled.

In its points of error 43–51, Allright complains of the awards of damages for Pearson's physical pain and mental anguish in the jury's answers to Special Issue No. 16. Allright argues that there was no evidence or insufficient evidence to support the jury's award for past physical pain; that the lack of such evidence precludes damages for mental anguish; that there were no findings of fact on physical pain or future mental anguish; and that the awards are excessive and due to inflammatory jury argument by Pearson's counsel.

Special Issue No. 16 read:

> Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff for her injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question.

> You shall consider the following elements of damages, if any, and none other.

> Answer separately in dollars and cents, if any, with respect to each of the following elements:

| | | |
|---|---|---|
| (a) | Physical pain in the past. | ANSWER: $ 5,000.00 |
| (b) | Mental anguish in the past. | ANSWER: $30,000.00 |
| (c) | Physical pain which in reasonable probability she will suffer in the future. | ANSWER: $ .00 |
| (d) | Mental anguish which in reasonable probability she will suffer in the future. | ANSWER: $ 1,000.00 |

The special issue required the jury to make findings of fact concerning physical pain and mental anguish, and the awards in dollars in sections (a), (b), and (d) constituted affirmative findings just as the award of

no dollars in section (c) constituted a negative finding.

■ There is evidence that Pearson suffered physical pain. She testified that during and after the robbery she experienced physical symptoms of anxiety and shock; that she felt physically ill, nauseous, short of breath, chilled, and trembling; and that she had cramps. Sissy Gordon, who observed Pearson soon after the robbery, stated that Pearson was "very disoriented and probably in shock," nervous, and shaking. The symptoms Pearson suffered were evidence of physical pain caused by the robbery. While there can be no recovery for physical pain caused by mental anguish unless there is evidence of a causal relation between the acts of the defendant and any pain suffered by the plaintiff, *Phillips v. Latham,* 523 S.W.2d 19, 25–26 (Tex.Civ. App.—Dallas 1975, writ ref'd n.r.e.), there was a causal connection between Allright's conduct and the pain Pearson suffered. Allright's negligent omissions were found to be the proximate cause of the robbery. This was sufficient evidence to support the award for past physical pain.

Pearson would nevertheless be entitled to recover for mental anguish even if there was no evidence of physical pain. When a defendant is guilty of gross negligence, i.e., heedless and reckless disregard of the rights of others affected by it, the injured party can recover for mental anguish even in absence of any physical injury or pain. *See Farmers and Merchants State Bank v. Ferguson,* 605 S.W.2d 320, 326 (Tex.Civ. App.—Fort Worth 1980), *reformed and aff'd,* 617 S.W.2d 918 (Tex.1981). The jury found Allright's conduct to be a heedless and reckless disregard of the rights of others, and we have held in earlier points of error that the evidence supports that finding.

■ Allright argues that the awards were excessive. When reviewing the award of damages, the general rule on appeal is that the finding of the jury will not be disturbed on the ground of excessiveness if there is any probative evidence to sustain the award. The appellate court may not substitute its judgment for that of the jury, and it may not disturb the jury's award in the absence of a clear showing of passion, bias, or prejudice and a finding that the award is so excessive as to shock the conscience of the court. *Armellini Express Lines of Florida, Inc. v. Ansley,* 605 S.W.2d 297, 310 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Here, the exemplary damages were reasonably related to the actual damages. *See Kraus v. Alamo National Bank,* 586 S.W.2d 202 (Tex.Civ.App.—Waco 1979), *aff'd,* 616 S.W.2d 908 (Tex.1981), and we find no basis for disturbing the jury's award.

Allright's claims that damage awards were due to counsel's "inflammatory" jury argument are disposed of and rejected by our determination in points of error 1–3, and 52 that the argument was not inflammatory. Allright's points of error 43–51 are overruled.

■ Allright's point of error 57 asserts that the trial court erred in failing to submit its timely requested special issues inquiring whether Pearson was contributorily negligent. The record indicates that Allright did not plead contributory negligence. Neither was there evidence that Pearson's conduct contributed to the armed robbery. The trial court correctly refused to submit the issue. *See Harrison v. Harrison,* 597 S.W.2d 477, 486–87 (Tex.Civ. App.—Tyler 1980, writ ref'd n.r.e.); *see also Texas Construction Service Co. of Austin v. Allen,* 635 S.W.2d 810, 814 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.) (op. on reh'g); Tex.R.Civ.P. 279. Allright's point of error 57 is overruled.

Point of error 58 asserts that the trial court erred "in failing to enter judgment against Ronald Lewis Brown [the convicted robber] who was duly served and entered an appearance personally at trial."

■ The point is frivolous and misstates the record. Brown was physically led into court for identification as the robber, but was never a party to the suit. Point of error 58 is overruled.

Pearson asserted two cross-points on appeal. The first complains that Allright did not timely file the statement of facts. Because extensions were granted, the filing was timely, and appellee's first cross-point is overruled.

Pearson's second cross-point complains of the trial court's exclusion of evidence that Allright's general manager was robbed at gunpoint in a downtown Houston parking lot three years prior to Pearson's robbery. Pearson asserts that this was probative evidence that Allright had knowledge of the potentially dangerous conditions in the Rice Rittenhouse garage.

■ The trial court could reasonably conclude that the conditions present in an open-air parking lot could not be equated to those of a parking garage at a remote time. The trial court did not abuse its discretion by excluding this evidence, and Pearson's second cross-point is overruled.

■ Appellee Pearson has filed a motion with this Court to reform the judgment to include prejudgment interest, as provided for in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554–556 (Tex.1985). We agree that this reformation is appropriate, and the motion to reform is granted.

*Cavnar* holds that,

as a matter of law, a prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365-day year) on damages *that have accrued by the time of judgment.* To the extent that other cases conflict with this holding, they are overruled. Prejudgment interest shall accrue at the prevailing rate that exists on the date judgment is rendered according to the provisions of Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 sec. 2 (Vernon Supp.1985).

*Id.* at 554 (emphasis in original) (footnote omitted). The opinion further directs that

In wrongful death and non-death personal injury cases, interest shall begin to accrue on both pecuniary and non-pecuniary damages from a date six months after the occurrence of the incident giving rise to the cause of action.

*Id.* at 555. Accordingly, prejudgment interest is ordered on the $36,578.10 portion of the judgment representing the combined awards of damages for past physical pain ($5,000), past mental anguish ($30,000), and property damage ($1,578.10).

The robbery incident made the basis of Pearson's cause of action occurred on July 2, 1980. Therefore, the prejudgment interest allowed is to be computed for the period commencing six months from that date, or January 2, 1981, until the date of judgment, May 16, 1984.

Prejudgment interest in this case is to be computed at the rate of 10 percent per annum, in accordance with article 5069–1.-05 and 9 Tex.Reg. 2277 (1984).

Interest on $36,578.10 at 10 percent per annum, compounded daily, based on a 365-day year, for the period from January 2, 1981, until May 16, 1984, totals $14,641.17; this amount of prejudgment interest is added to the $87,578.10 judgment, resulting in a reformed judgment of $102,219.27, which will bear interest at the applicable post-judgment legal rate of 10 percent per annum. 9 Tex.Reg. 2277 (1984).

As reformed to include prejudgment interest, the judgment is affirmed.

HOYT, J., dissents.

HOYT, Justice dissenting.

I respectfully dissent from the majority's denial of appellant Allright, Inc.'s motion for rehearing. My disagreement centers around the damages awarded and I believe that, in the interest of justice, a rehearing would be proper because the damages awarded are patently excessive and improper as a matter of law.

The specific focus of my disagreement arises out of Special Issues No. 16 and 17. Special Issue No. 16 inquired:

Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff for her injuries, if any, which you find from a preponder-

ance of the evidence resulted from the occurrence in question.

You shall consider the following elements of damages, if any, and none other.

Answer separately in dollars and cents, if any, with respect to each of the following elements:

(a) Physical pain in the past.     Answer: $ 5,000.00

(b) Mental anguish in the past.     Answer: $30,000.00

(c) Physical pain which in reasonable probability she will suffer in the future.     Answer: $     .00

(d) Mental anguish which in reasonable probability she will suffer in the future.     Answer: $ 1,000.00.

It is well established that the law will support recovery for physical or bodily injury or illness produced by fear or shock, when the fear or shock *and* the injury or illness are proximate results of negligent conduct on the part of the person sought to be held liable. *Sutton Motor Company v. Crysel*, 289 S.W.2d 631, 634 (Tex.Civ.App. —Beaumont 1956, no writ). Without a showing of physical or mental injury there can be no recovery for mental anguish, because mental anguish must have its genesis in a physical or mental injury. *Southwestern Bell Telephone Co. v. Cook*, 30 S.W.2d 497, 499 (Tex.Civ.App.—Fort Worth 1930, writ ref'd). Mental anguish is that keen and poignant suffering which results from some great grief; and hence mere disappointment, fear, or shock is not mental anguish. *Id.* Damages may also be awarded for mental anguish caused by fear, where there is evidence showing that a disease in all medical probability is impending as a result of negligence. *Dartez v. Fiberboard Corporation*, 765 F.2d 456, 467 (5th Cir.1985).

Appellee testified that at the time that she was accosted by the assailant, she felt sick to her stomach, nauseous, short of breath, began trembling and shaking all over. Although these symptoms of fear could result in trauma, no physical injury occurred; as appellee admitted. Her mental state was stressed because she was in fear and occasionally feared for her future safety because her keys were taken.

Public policy dictates that certain standards be respected in the award of damages especially where the uncertainty as to the amount of damages that might be recovered would open up an unlimited field of litigation. *Western Union Telegraph Co. v. Chamberlain*, 169 S.W. 370, (Tex.Civ. App.—Austin 1914, no writ). For these reasons, the general rule of common law exists that damages for purely mental suffering unaccompanied by bodily pain are not recoverable. *Id.* The jury's award of $5,000 for physical pain and $31,000 for mental anguish is, therefore, without foundation in the facts and is erroneous as a matter of law.

Likewise, the award of $50,000 for exemplary damages is erroneous because there is no proof of actual damages. *See Traweek v. Martin Brown Co.*, 79 Tex. 460, 14 S.W. 564 (1890). Exemplary damages should be reasonably apportioned to the actual damages sustained. *Moore's Inc. v. Garcia*, 604 S.W.2d 261 (Tex.Civ.App.— Corpus Christi 1980, writ ref'd n.r.e.). And without a showing of actual damages, exemplary damages are not recoverable.

For the foregoing reasons appellant's motion for rehearing should be granted.