Paula **EASTEP** et vir., Appellants,

v.

**JACK–IN–THE–BOX, INC.,** Appellee.

No. 1423.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 12, 1977.
Rehearing Denied Feb. 2, 1977.

John W. Turner, Robert A. Berry, Miller, Gann & Perdue, Houston, for appellants.

Thomas G. Bousquet, Bousquet & McPherson, Houston, for appellee.

CURTISS BROWN, Chief Justice.

Paula Eastep and her husband, Danny Eastep (the Easteps or appellants), filed suit against Jack-in-the Box, Inc. (appellee) and others to recover damages for injuries received by Paula while at a restaurant owned and operated by Jack-in-the-Box. All defendants other than Jack-in-the-Box were discharged prior to the submission of the case to the jury. The jury answered all liability issues favorably to appellants and found damages. The trial court granted the defendant's motion to disregard Special Issue 2(1)(a), (b), and Issue 2(2)(a), (b) and (c), and their motion for judgment non obstante veredicto. Judgment was entered that the plaintiffs take nothing.

On the night of August 24, 1973, Paula and Danny Eastep, along with Danny's brothers Lloyd and Kenneth, and Kenneth's wife, Charlene, went dancing at a local night club. When the club closed they went to a Jack-in-the-Box restaurant near their apartment in Pasadena, Texas, arriving there around 2:00 A.M. They placed their orders and sat down. Shortly thereafter, four men (the McDonalds) entered the restaurant, placed their orders, and also sat down. When the Eastep party's food was ready, Danny went to the counter to obtain it. As he passed by the McDonald party's table, they cursed him loudly. Further cursing and obscenities were exchanged between the two tables, whereupon the McDonalds jumped up and at least two of them drew out knives. After several minutes of taunting by the McDonalds, a fight ensued. The two women in the Eastep party made their way to one of the restaurant's exit doors. However, Paula Eastep, apparently seeing her husband in danger of being stabbed or cut by the largest of the McDonalds, went back into the melee and grabbed the aggressor by the hair, pulling him over a table. Having retained the grasp on his knife, this individual got up and began slashing wildly at Paula. She threw up her hands to protect her face and sustained a severe laceration on her right arm. The fight ended a few minutes after Paula was cut, and the police arrived almost immediately thereafter.

In answer to Special Issue No. 1, the jury found that Jack-in-the-Box, acting through its employees were negligent in: (1) failing to demand that the McDonalds leave the premises before the fight began; (2) failing to timely notify the police; and (3) failing to warn the Easteps of the McDonalds' acts and condition before the fight began. In answer to Special Issue No. 2, the jury found each of the above omissions were a proximate cause of Paula Eastep's injuries. The jury further found that Paula's actions were reasonable under the circumstances and did not constitute negligence. The trial court disregarded the jury's answers to Special Issue No. 2 and entered judgment non obstante veredicto for Jack-in-the-Box.

■ Appellants' two points of error assert that the trial court erred in granting appellee's motion for judgment n.o.v., and in failing to grant appellants' motion for judgment. A judgment non obstante veredicto is sustainable only if there is no evidence upon which the jury could have made

the findings relied on. In reviewing such a judgment, we must consider all testimony in the light most favorable to the party against whom it was rendered, and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 777 (Tex.Sup.1974); *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 550 (1962).

■ The owner of land is under a duty to exercise reasonable care for the safety of his invitees. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.Sup.1975). The weight of authority now recognizes that the duty of a proprietor of a restaurant, inn or similar establishment includes the exercise of reasonable care to protect his patrons from intentional injuries inflicted by third persons. *See* Annots., 70 A.L.R.2d 628 (1960); 10 A.L.R.3d 619, § 5 (1966); 40 Am.Jur.2d *Hotels, Motels, and Restaurants* §§ 111, 112 (1968). *See also* Restatement (Second) of Torts § 344 (1965). Such a duty has been recognized in Texas for owners of public theatres. *East Texas Theatres, Inc. v. Rutledge,* 453 S.W.2d 466, 469–70 (Tex. Sup.1970); *Marek v. Southern Enterprises, Inc.,* 128 Tex. 377, 99 S.W.2d 594 (1936, opinion adopted). As patrons, appellants were invitees of appellee; therefore, appellee owed appellants a duty of reasonable care to protect them from the assaults of third persons while on the premises.

Section 344 of the Restatement (Second) of Torts (1965) states that a possessor of land held open to the public for business purposes is liable for patrons' injuries that are caused by the intentional acts of third persons *and* by "the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." The portion of the rule requiring notice to the possessor that acts of violence are likely to be done

> does not require a long and continued course of conduct to find that the propri-

etor had knowledge of the violent disposition of the other patron—all that is necessary is that there be a sequence of conduct sufficiently long to enable the proprietor to act for the patron's safety. It is not necessary that the proprietor know of a history of a series of offenses against the peace.

*Coca v. Arceo,* 71 N.M. 186, 376 P.2d 970, 973 (1962). *Accord, Kimple v. Foster,* 205 Kan. 415, 469 P.2d 281, 286 (1970).

■ In the instant case the evidence showed that at the time of the incident there were four or five Jack-in-the-Box employees on duty and eight to twelve patrons present in addition to the McDonalds. Paula Eastep testified that she first noticed the McDonalds because they were talking loudly and banging on the counter where orders are taken. She said that they were acting "weird." The Easteps' order was called "two or three minutes" later, after the McDonalds had sat down. It took Danny about a minute to get the food. Paula stated that after Danny came back with their order the McDonalds began shouting obscenities and making obscene gestures at them. After one of the Easteps returned an obscenity, the McDonalds jumped up and drew out their knives. She testified that after the McDonalds got up there was about a two-minute period before any blows were struck, during which time the Easteps were trying to stall off a fight while the McDonalds were hurling epithets, obscenities, and taunts at them. The fight then began, and it was, in her estimation, another two-and-a-half to five minutes before she was cut. She stated that the police arrived four-and-a-half or five minutes after she was cut. Kenneth and Lloyd Eastep also testified that they first noticed the McDonalds when they were "loudmouthing" at the front counter.

Steve Gregg, a patron in the Jack-in-the-Box when the fight started, testified that the McDonalds

> were kind of tough acting, you know, like there was a couple of big guys, a couple

of medium size guys. They were, looked like they were hopped up on something, a little high or something like that. They come in, sat down and acted kind of tough and slouchy. They were kind of cussing among themselves. I could hear the cussing.

He stated that from the time that the Mc-Donalds entered the restaurant until they sat down was about four minutes. From the time they sat down until they got up and took out their knives was another two or three minutes.

Randall Kimmel, Gregg's roommate, was also in the Jack-in-the-Box when the fight started. He testified that the McDonalds were talking loud and "looking for trouble, it looked like." He stated that "I was eating at the time they were up at the counter and I heard them talking to the manager. There was profanity."

The person in charge of the restaurant at the time of the incident was Ismael Cavazos, the assistant manager. He testified that when the McDonalds entered the restaurant, he was away from the counter preparing another order. He asked them to "hold on a second," to which the largest of the McDonalds replied, "Hold on, sh**." Cavazos stated that this comment was loud enough to have been heard by some of the other patrons. Although he was busy with something else, Cavazos stated that when this abusive language was directed at him, "I got the impression he was in a nasty mood, so I went ahead and hurried and got their order." He also testified that he thought one of them had a knife or a gun: "He had his hand in his pocket and, you know, when he approached me with that expression of 'Hold on, hell,' you know, I thought to myself, well, you know, this guy must be armed or something." He recalled stating in a deposition that he was "scared [McDonald] was going to start a fight." Cavazos stated that the McDonalds had red eyes and slurred their words, and that he was "pretty sure" they had been drinking. After he had taken their order, Cavazos

said he heard them using other vulgar language.

Cavazos testified that Jack-in-the-Box employees are instructed to ask anyone using profanity to leave, and to call the police if they do not leave. However, he did not ask the McDonalds to leave even after hearing them use vulgar and abusive language, some of which was directed at him.

Cavazos stated that as he was preparing food in the "fry area", he heard loud noises from the dining room and when he looked, he saw the two groups faced off and the McDonalds' knives drawn. He testified that his "mind went blank for awhile," and he did nothing until the fight actually began. He admitted that there might have been time for him to get out in the dining room while the two groups were still just talking. When the fighting did start he said he then told one of the other employees to call the police. However, he also stated that the other employees were more shocked than he was: "They weren't moving; they were just sitting there . .."

Cavazos testified that he had called the police to come to that Jack-in-the-Box on many occasions. He said that it took an average of five or ten minutes for them to arrive. He stated that on this particular occasion the police arrived "almost" as the McDonalds were going out the back door.

L. G. Lilleux, a member of the Pasadena Police Department, testified that the police records indicated that on this occasion a call was received by the police department at 2:36, and the police arrived on the scene at 2:39. Cavazos stated that he thought the fighting lasted a total of five or ten minutes. Robert Harrah, another Jack-in-the-Box employee present that night, testified on deposition that he thought the fight lasted ten or fifteen minutes.

We hold that the record contains some evidence of probative value to support the jury findings that appellee, through its employees, was negligent in failing to demand that the McDonalds leave the premises before the fight began, in failing to timely notify the police, and in failing to warn

appellants of the acts and condition of the McDonalds before the fight began.

While strongly urging that it owed appellants "no duty" and was not negligent, appellee primarily contends that there was "no evidence" to support the jury's findings on proximate cause. The elements of proximate cause are: (1) cause in fact, and (2) foreseeability. We believe the evidence outlined above is sufficient to show the presence of the element of foreseeability. The question narrows, then, to whether the negligent acts of appellee's employees were a cause in fact of Paula Eastep's injury. "[W]hether a particular act of negligence is a cause in fact of an injury has been said to be a particularly apt question for jury determination." *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 756 (Tex.Sup.1975). *See also Biggers v. Continental Bus System, Inc.,* 157 Tex. 351, 303 S.W.2d 359 (1957).

In the instant case the time sequence of the particular events is crucial. Steve Gregg estimated that the length of time that the McDonalds were in the restaurant before they jumped and drew out their knives was a total of six or seven minutes. Randy Kimmel estimated this period to be five minutes. Paula and Lloyd Eastep estimated that there were two minutes between the time the McDonalds jumped up and the actual beginning of the fight. Danny estimated this time as two or three minutes. From the time the fight started until Paula was cut was estimated by Kimmel to be three or four minutes. Danny estimated this period to be two or three minutes, and Paula's estimate varied between two-and-a-half and five minutes. Danny estimated that the fight ended from one to three minutes after Paula was cut. Cavazos stated that the police arrived "right after" the fight ended, almost as the McDonalds were going out the back door.

The total length of time of the fight was estimated by Danny to be two to four minutes, by Kenneth Eastep to be four or five minutes, by Cavazos to be five or ten minutes, and by Robert Harrah to be ten or fifteen minutes. As noted previously, police records showed that the police arrived three minutes after they were called. Cavazos, who took the McDonalds' orders, had notice of their condition and conduct soon after they arrived; however, he did not ask them to leave. Robert Harrah testified that when a patron is asked to leave the dining room because of the way he is conducting himself, that usually is sufficient. In those instances in which an offensive or abusive patron does not leave when asked, a call to the police usually will produce a quick exit before the police arrive. When asked how such an individual knows they are calling the police, Harrah answered: "They can see us. The phone is right there, all we've got to do is dial the number and they know I am calling the police." He said they had the police telephone number "right there."

Had the Jack-in-the-Box employees demanded that the McDonalds leave as soon as they had notice of the likelihood that the McDonalds might commit acts of violence, the fight probably would never have gotten started. Certainly the jury could have believed that the police would have arrived before Paula Eastep was injured.

Moreover, it is a reasonable inference that if the Jack-in-the-Box employees had acted as soon as they saw weapons displayed, the police would have arrived before Paula was cut. There was evidence that the McDonalds taunted the Easteps with knives drawn for two or three minutes before the first blow was struck. It was during this time that the employees saw the confrontation but were "paralyzed" and did nothing. There was evidence that Paula was not cut until as long as five minutes after the first blow. The police arrived three minutes after being called. This is sufficient to support a finding of cause in fact.

We hold that the record contains some evidence of probative value that the negligent acts of the employees of appellee were a proximate cause of the injuries sustained by Paula Eastep. Appellants' points of error are sustained. The judgment of the trial court is reversed, and judgment is here rendered that appellants, Paula Eastep and

Danny Eastep, recover from appellee, Jack-in-the Box, Inc., the damages found in accordance with the verdict of the jury.

Reversed and rendered.