Nancy J. RONK, Appellant,

v.

PARKING CONCEPTS OF TEXAS, INC., Appellee.

No. 2–85–007–CV.

Court of Appeals of Texas, Fort Worth.

June 4, 1986.

Rehearing Denied July 23, 1986.

Steves, Leonard & Jones and William C. Cooper and Sterling W. Steves and Joe A. Garza, Jr., Fort Worth, for appellant.

Greenberg, Benson, Fisk & Fielder, P.C. and Hollye C. Fisk, Dallas, for appellee.

Before FENDER, C.J., and JOE SPURLOCK, II and ASHWORTH (Retired), JJ.

## OPINION

FENDER, Chief Justice.

Appellant, Nancy J. Ronk, appeals from the trial court's action in granting a summary judgment in favor of appellee, Parking Concepts of Texas, Inc. The issue involved was whether the owner/lessor of an open-air pay parking lot breached any duty owed to one of its monthly tenants, and was therefore liable for personal injuries she sustained as a result of a criminal assault by a third party.

We affirm.

Appellant's sole point of error is that the trial court erred in granting appellee's motion for summary judgment, because premises liability due to the criminal acts of third parties is a recognized cause of action in Texas, and because significant fact questions were raised by appellant as to whether appellee had notice that criminal activity was likely to occur.

Appellant filed suit against appellee for damages for multiple injuries sustained as a result of an incident which occurred on August 31, 1981, at approximately 1:30 p.m. in Fort Worth, Texas. Appellant alleged, and the summary judgment proof established, that appellant paid to park her car on a monthly basis in a parking lot owned by appellee. This lot was located at 221 West Lancaster, adjacent to the Texas and Pacific Building (T and P Building) where appellant was employed.[1] While she was walking from her office to the parking lot on the day in question, appellant noticed that she was being followed by a man. This individual suddenly and without warning or provocation struck appellant, hit her repeatedly, cursed her and dragged her toward her car. The assailant forced appellant into her own car, whereupon a struggle ensued and appellant eventually lost consciousness. When the assailant attempted to start the car and drive away, the car stalled and hit a curb, at which point appellant regained consciousness and managed to escape. The parking facility where the attack occurred is owned by appellee which maintained a manned, air-conditioned parking booth in the parking area located on the opposite side of the office building, but no other security features and no manned booth on the site where the attack occurred. The manned booth was not equipped with a telephone.

In her pleadings, appellant alleged that appellee as operator of the parking lot owed a duty to appellant, as a business invitee, to provide sufficient precautions against reasonably anticipated criminal conduct by third parties, and to provide an effective warning or a reasonably sufficient number of servants to afford protection to appellant on the lot. Appellant alleged that appellee breached its duty to appellant which action constituted negligence.

Appellee filed a motion for summary judgment in which it stated that the applicable rule in the instant case is that there is no duty upon appellee to guard against the criminal acts of a third party, *unless* appellee knew or had reason to know that acts that posed an immediate probability of harm to appellant or other invitees were

---

1. Appellee is not the owner of the adjacent T and P Building.

occurring or about to occur on the premises.

Appellant responded to appellee's summary judgment motions by claiming there were genuine issues of material fact yet unresolved, to-wit: there was sufficient evidence, based upon the past incidents of criminal activity and the extremely poor reputation of the area in question, for a jury to find that appellee did not exercise reasonable care to protect appellant.

The trial court granted appellee's motion for summary judgment and found that there were no genuine issues as to any material fact regarding appellee's right to a take nothing summary judgment.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R. CIV.P. 166-A. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *Id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47. If such uncontroverted evidence is from an interested witness, it cannot be considered as doing more than raising a fact issue, unless it is clear, direct, positive and free from inconsistencies and contradictions. *Id.* The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

In the instant case, we must determine if a genuine issue of material fact exists with regard to whether an entity, situated as our appellee, owed a duty to guard against the type of criminal conduct of a third party as was alleged by appellant. Appellee's position is that it had no duty to protect appellant from the criminal acts of third parties *in the absence of knowledge* that acts were occurring, or were about to occur, on the premises that posed an immediate probability of harm to appellant or other invitees.

The long-standing rule that a plaintiff must prove the existence and violation of a legal duty owed to him by a defendant in order to establish negligence liability remains intact. Three elements must be proven in order to establish liability for negligence: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976). In order to determine whether appellee breached any duty owed to appellant, we must initially determine appellant's status on the property as a paying customer of the parking lot.

An invitee is one who enters onto another's land with the owner's knowledge and for the mutual benefit of both parties. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975). The record before us clearly establishes that appellant occupied the status of an invitee on the parking lot premises operated by appellee. Therefore, the next issue we must consider is what duty appellee owed to appellant, as a business invitee.

The general rule with regard to physical dangers existing on the property is that the operator of a premises has a duty to an

invitee to exercise ordinary care to keep the premises in a reasonably safe condition so that the invitee will not be injured. *Genell, Inc. v. Flynn*, 358 S.W.2d 543, 546 (Tex.1962). *See also Atchison, Topeka and Santa Fe Railway Company v. Smith*, 563 S.W.2d 660, 666 (Tex.Civ.App. —Waco 1978, writ ref'd n.r.e.). Where the duty to keep premises in a safe condition is imposed upon a person in control of them, this duty may include the duty to inspect the premises to discover dangerous conditions. *Id.* Generally, the owner or occupier of land can be charged with knowledge and appreciation of a dangerous condition on his premises only *if* a reasonably prudent person should have foreseen a probability that the condition would result in injury to another. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 754 (Tex.1970).

The Supreme Court of Texas recently had occasion to concern itself with the concept of foreseeability in *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985). Although *Nixon* dealt with a duty imposed by ordinance upon an apartment house owner (the breach of which duty—requirement that owners shall keep all doors and windows of a vacant structure securely closed so as to prevent unauthorized entry—allowed a third party to commit rape inside a vacant apartment), the Court discussed the concept of "foreseeability" as follows:

> Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 [(Tex.1977)]. Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. However, the tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence. Texas courts follow this rule. *See Castillo v. Sears Roebuck & Co.*, 663 S.W.2d 60 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Walkoviak v. Hilton Hotel Corp.*, 580 S.W.2d 623 (Tex.Civ.App.—

Houston [14th Dist.] 1979, writ ref'd n.r.e.).

The RESTATEMENT (SECOND) OF TORTS sec. 448 (1965) states:

> [Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence]
> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.* [Emphasis in original opinion.]

*Nixon*, 690 S.W.2d at 549–50.

The Supreme Court in *Nixon* further opined that "[e]vidence of specific previous crimes on or near the premises raises a fact issue on the foreseeability of criminal activity." *Id.* at 550, citing as an example (in addition to several out-of-state cases) *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). *Walkoviak's* factual situation is more similar to that of the instant case, than is that of *Nixon*. *Walkoviak* involved an appeal from a summary judgment rendered in favor of the defendant/appellee, Hilton Hotels Corp., in a suit for personal injuries sustained by a hotel patron in the adjacent hotel parking lot, based upon the alleged negligence of the hotel in failing to provide adequate security against the criminal activity of third persons. The court stated the general rule as follows:

> The proprietor of the public business establishment has the duty to exercise reasonable care to protect his patrons from intentional injuries caused by third persons if he has reason to know that such acts are likely to occur, either generally or at some particular time. Liability for

injuries may arise from the failure of the proprietor to exercise reasonable care to discover that such acts by third persons are occurring, or are likely to occur, coupled with the failure to provide reasonable means to protect his patrons from the harm or to give a warning adequate to enable the patrons to avoid the harm. *Walkoviak,* 580 S.W.2d at 625.

The *Walkoviak* court in support of this proposition cited the RESTATEMENT (SECOND) OF TORTS sec. 344 (1965). This section provides:

Business Premises Open to Public: Acts of Third Persons or Animals

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or *intentionally harmful acts of third persons* or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it. [Emphasis added.]

*Id.* Additionally, *Walkoviak* relied upon the cases of *Morris v. Barnette,* 553 S.W.2d 648 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.); and *Eastep v. Jack-In-The-Box, Inc.,* 546 S.W.2d 116 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

In *Morris,* the trial court granted a summary judgment in favor of the defendant, a washateria, in a suit brought by a customer-invitee for personal injuries sustained as a result of a physical and sexual assault on the premises by a third party. The plaintiff alleged that the washateria was negligent in failing "to take such necessary precautions, such as having a watchman, an alarm, or some type of protection as would have protected Plaintiff, an invitee, from the occurrence herein complained of." *Morris,* 553 S.W.2d at 649. In its discussion of the duty of a possessor of business

premises to control the conduct of a third party on the premises, the appellate court cited a rule of law stated in PROSSER, THE LAW OF TORTS at 405 (3d ed. 1964). The current edition of that publication provides as follows (all footnotes are omitted):

In particular, the possessor must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands. He must act as a reasonable person to avoid harm from the negligence of ... other persons who have entered it, and even from intentional attacks on the part of such third persons. *He is required to take action when he has reason to believe, from what he has observed or from past experience, that the conduct of the other will be dangerous to the invitee, but not if there is no reason to anticipate a problem.* Again, in the usual case, a warning will be a sufficient precaution, unless it is apparent that, either because of lack of time or by reason of the character of the conduct to be expected on the part of the third person, it will not be effective to give protection. [Emphasis added.]

PROSSER & KEETON, THE LAW OF TORTS at 428 (5th ed. 1984).

Additionally, the *Morris* court quoted sec. 344 of the Restatement (Second) of Torts, *supra,* particularly comment f of that section wherein it is stated:

Comment:

\*　\*　\*　\*　\*　\*

f. Duty to police premises. Since the possessor is not an insurer of the visitor's safety *he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur.* He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect

it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection. [Emphasis added.]

Morris, 553 S.W.2d at 649–50, quoting the RESTATEMENT (SECOND) OF TORTS sec. 344 comment f (1965).

The second case upon which the Walkoviak court relied was Eastep, 546 S.W.2d 116. That case involved a suit brought against a restaurant owner for injuries sustained by a patron in a fight at the restaurant. After the jury found that the defendant was negligent in failing to take certain actions to prevent injury to the plaintiff, the trial court granted the defendant's motion for judgment non obstante veredicto. In determining the proper duty of care to be imposed upon the defendant, the appellate court quoted sec. 344 of the Restatement (Second) of Torts, and ultimately reversed, finding there was some evidence in support of the jury's verdict. Id. at 119–20.

Another case dealing with this area of the law and cited by the Supreme Court in Nixon, 690 S.W.2d at 550, is Castillo v. Sears, Roebuck & Co., 663 S.W.2d 60 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). Castillo involved personal injuries sustained by a customer as a result of a confrontation with third persons outside the defendant's retail store in a mall (although the transaction originated inside the store). The court stated that "it would be patently unfair and unjust to impose the vague duty of section 344, Restatement of Torts (Second) (1966) on the shopkeepers and merchants of Texas to exercise reasonable care to discover the sudden criminal acts of un-

known and unidentified persons are being done or likely to be done." Id. at 66. However, the Castillo court found that the appropriate rule applicable to that case was that:

There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or are about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises. [Emphasis added.]

Id.

■ Based upon our review of all the aforementioned authorities,[2] it appears by analogy and we hold that the operator of an open-air parking lot owes a duty to protect his business invitees from intentional injuries caused by third parties if the operator has reason to believe from what he has observed or from past experience that such acts are occurring, or that there is a likelihood that such acts are about to occur, on the part of third persons which is likely to endanger the safety of the business invitee.

Accordingly, we must examine the summary judgment evidence in the case at bar so as to determine if a genuine issue of material fact existed regarding whether appellee herein should have reasonably anticipated the criminal conduct which occurred on the part of a third person.

Appellee's summary judgment proof consisted of two affidavits. The first was from George Bartlett, appellee's Regional Manager since January 2, 1980, who stated that between January 2, 1980 and August 31, 1981 (the date of the assault to appel-

---

**2.** For a comprehensive review of articles on this subject and a summary of cases from other jurisdictions, see Gibbins & Pan, *Landlords and Third-Party Criminal Conduct,* Vol. 22 TRIAL, 48–52 (March 1986); and J. PAGE, THE LAW OF PREMISES LIABILITY sec. 4.11, at 42–49, 120–21 (Supp. 1985–86).

lant) neither appellee nor any of its agents, servants or representatives had knowledge of any criminal activity involving personal injury in the vicinity where the assault occurred. Further, the affiant stated that none of these individuals had knowledge or reason to know that any acts that posed an imminent probability of danger to any person, were about to occur on the lot in question.

Appellee's second affidavit was that of Eleanor Tenery, appellee's employee. Tenery stated that she was the attendant on duty on the occasion in question, and was situated within the air-conditioned booth which was on the north side of the office building. The first notice Tenery had of the assault was when a man ran up to the window in the booth and asked if she had seen an accident; he further inquired about the location of the nearest telephone. Tenery never saw anyone involved in the incident, nor did she have reason to suspect that acts had occurred or were about to occur on the parking lot that posed a danger to anyone. Lastly, Tenery stated that she had worked as an attendant at the parking lot for two years and knew of no one being injured on or adjacent to the parking lot as a result of criminal activity.

Appellant's summary judgment response included affidavits from six employees of the United States Department of Housing and Urban Development in Fort Worth (appellant's place of employment). Basically, these affiants stated their familiarity with the area immediately surrounding their office building, and related the undesirable reputation and potentially dangerous character of the area.

Additionally, attached to appellant's response was the deposition of police Lieutenant Ray M. Barnes, the records custodian of the City of Fort Worth Police Department. Attached to Barnes' deposition were 19 exhibits. Exhibit 1 was a police offense report concerning the occurrence made the basis of the instant lawsuit. Exhibits 2 through 18 consisted of offense reports of the Fort Worth Police Department relating various incidents which occurred either on appellee's premises or in the immediate vicinity of appellee's parking lot, from May 13, 1979 through August 31, 1981. Appellant laid the proper predicate for the introduction of Exhibits 1–18 as business records of the Fort Worth Police Department. *See* TEX.R.EVID. 803(6).

Appellant's Exhibit 19 consisted of fifty-six pages of numerous offense reports from the Fort Worth Police Department. These documents were not provided by the witness, Lieutenant Barnes, but were in fact furnished by appellant's attorney at Barnes' deposition wherein said counsel indicated that these documents were "Xerox copies of materials we received previously in this case from the Fort Worth Police Department." Many of these documents appear to be photostatic copies of identical reports in Exhibits 2–18. Additionally, in some of the reports in Exhibit 19 the names and addresses of witnesses and injured parties are illegible inasmuch as they have been blackened out.[3]

Appellee's attorney objected during the deposition to any mention of these documents in Exhibit 19 inasmuch as they were not furnished by the witness, and they would be hearsay since Barnes was not the keeper of the records of these copies, nor was there any indication that these were true and correct copies of the originals on file with the Fort Worth Police Department. Appellee maintains the same stance on appeal.

At his deposition, Barnes initially identified Exhibit 19 as true and accurate copies of offense and incident reports that are on file in the Fort Worth Police Department Records Division; that these records are kept in the regular course of business; that it is in the regular course of business for the Fort Worth Police Department to make

**3.** Lieutenant Barnes testified that the Texas Open Records Act prohibits the police department from releasing to the general public the names of alleged defendants or witnesses. However, he stated that once a report is subpoenaed, the complete unadulterated report is furnished.

such records; that the records were made at or near the time of offense they portray, or reasonably soon thereafter; and that the basic reason the officer did not bring these records to the deposition in response to the subpoena duces tecum was that "we might not have been able to spot them in our index that we looked up these for you. I'm not saying that we might have overlooked one. The subpoena said 221 West Lancaster or close to it, so we just went as close as we could. I'm not saying that we didn't overlook one or two. Lancaster is a busy street."

■ Upon examination by appellee's attorney, however, Barnes testified that the reports in Exhibit 19 "appear to be copies that are on file in our division, but I have not seen them before." Finally, the witness stated he could *not* testify that the documents in this exhibit are true and accurate copies of documents on file in the Fort Worth Police Department.

We find that appellant has not established the proper predicate for the admission of Exhibit 19; therefore, we will not consider this exhibit in our review of the summary judgment proof.

Inasmuch as the crucial issue before us is whether appellee knew or should have reasonably anticipated that acts were occurring, or were about to occur, on its premises that posed a imminent probability of harm to one of their business invitees, we will briefly summarize each of the 17 incidents reported in Exhibits 2–18, beginning with May 13, 1979 and ending August 31, 1981 (the date of the assault to appellant):

| EXH.# | OCCURRENCE: DATE | LOCATION [4] | DETAILS |
|---|---|---|---|
| 2 | Theft of a vehicle May 13, 1979 | Parking lot | Keys were left in vehicle. |
| 4 | Theft of a vehicle August 7, 1979 | Parking lot | Owner stated there was a possibility that the keys were left in the trunk lock. |
| 5 | Theft of property (building materials) November 12, 1979 | Adjacent building | |
| 3 | Theft of property (telephone) November 24, 1979 | Adjacent building | Workmen were installing telephones and left the door to the office open while they were not there. |
| 9 | Assault by contact March 21, 1980 | Adjacent building | Helper at a wine tasting party was attacked by a male guest (the date of the woman to whom helper was talking), and received a small scratch on his neck (made by a broken wine glass). |
| 10, 11[5] | Theft of property (calculator) March 29, 1980 | Adjacent building | Unknown person stole a new calculator from main lobby of an office. |
| 7 | Burglary of an office April 11–13, 1980 | Adjacent building | Unknown person stole an automatic adding machine from office. |
| 8 | Unlawful carrying of a weapon | Adjacent building | An office employee got his gun out of layaway at a store on his way to |

**4.** All references to "parking lot" in the summary of Exhibits 2 through 18 refer to the parking lot located at 221 West Lancaster, the location of appellant's assault. Any mention of "adjacent building" in this summary refers to the Texas and Pacific Building (T and P Building—appellant's place of employment), also located at 221 West Lancaster, adjacent to the parking lot referred to herein.

**5.** These exhibits are identical copies of offense reports regarding the same incident.

| EXH.# | OCCURRENCE: DATE | LOCATION | DETAILS |
|---|---|---|---|
|  | April 30, 1980 |  | work. Gun was confiscated and later reclaimed by employee. |
| 6 | Theft of property (drill from open bed of pick-up) June 23, 1980 | Parking lot |  |
| 12 | Theft of AM/FM (stereo from office) November 7–10, 1980 | Adjacent building | Locked office was broken into by unknown person and stereo was stolen. |
| 13 | Theft of property (color television set) November 4–5, 1980 | Adjacent building | Janitor took home the television set because he was disgruntled with his pay. Merchandise was later returned by him. |
| 15 | Burglary of office February 13–17, 1981 | Adjacent building | Office door and a safe were pried open and $7,000 cash was stolen. |
| 14 | Theft of property (hub caps from vehicle) April 1, 1981 | Parking lot |  |
| 16 | Criminal trespass April 9, 1981 | Office building | Building manager requested that a man leave the building, whereupon he refused and was "very abusive" in his speech and manner toward her. |
| 17 | Theft of property (paint from open bed of pick-up) May 17, 1981 | Parking lot |  |
| 18 | (This exhibit is merely a supplemental report regarding the incident described in Exhibit 17.) |  |  |

Appellee asserts that the occurrences documented in Exhibits 2–18 do not constitute a clearly proven pattern of criminal violence of the precise nature which occurred to appellant. Appellant, on the other hand, takes the position that the "prior similar incidents rule" (whereby appellee would only be responsible for anticipating prior similar crimes), is not the applicable standard by which appellee's knowledge is to be measured.

In support of her position that the correct standard is the "totality of the circumstances" rule, appellant relies upon the California case of *Isaacs v. Huntington Memorial Hosp.*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653 (1985). In *Isaacs*, the primary issue presented was whether fore-seeability, for the purposes of establishing a landowner's liability for the criminal acts of third persons on the landowner's property (doctor was shot in a hospital parking lot), may be established other than by evidence of prior similar incidents on those premises. *Id.* 211 Cal.Rptr. at 360, 695 P.2d at 657. After the presentation of the doctor's case-in-chief, the trial court concluded as a matter of law that the assault was not foreseeable by the defendants. *Id.* 211 Cal.Rptr. at 360, 695 P.2d at 657. The Supreme Court of California reversed, holding:

> Foreseeability of harm should ordinarily be determined by a jury. That determination calls for the consideration of what is reasonable in light of all the

circumstances. One such circumstance is whether the occurrence of prior similar incidents placed the defendant on notice that its security measures were not adequate to prevent harm to persons who use the defendant's premises. While prior similar incidents are helpful to determine foreseeability, they are not required to establish it. Other circumstances may also place the landowner on notice of a dangerous condition. A rule which limits proof of foreseeability to evidence of prior similar incidents automatically precludes recovery to first-injured victims. Such a rule is inherently unfair and contrary to public policy.

*Id.* 211 Cal.Rptr. at 368, 695 P.2d at 665.

We do not disagree with the reasoning of the California court that "other circumstances" may also place a landowner on notice of a dangerous condition. In fact, the Supreme Court of Texas in effect agreed with this position in *Nixon* when it stated:

> [*I*]t is not required that the particular accident complained of should have been foreseen. All that is required is 'that the injury be of such a *general character as might reasonably have been anticipated;* and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.' [Emphasis in original.]

*Nixon*, 690 S.W.2d at 551, quoting *Carey v. Pure Distributing Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939).

The "other circumstances" in *Isaacs* were delineated by that court as follows:

1) The hospital was located in a "high crime area";

2) Several threatened assaults had occurred in the emergency room area directly across from the research parking lot (where the attack occurred);

3) There had been thefts in the area;

4) A hospital security guard testified that incidents involving "harassment" were "very common";

5) Two of the normally illuminated lights on the building adjacent to the research parking lot were not working on the evening of the attack on the doctor;

6) The research parking lot was devoid of any security, whereas the security at another parking lot on the hospital's premises consisted of a security guard during shift changes, and activity was monitored by a television camera; and

7) Finally, the court cited Prosser for the proposition that emergency room facilities and surrounding areas are inherently dangerous, and that parking lots by their very nature create an especial temptation and opportunity for criminal misconduct.

*Isaacs*, 695 P.2d at 661–62.

A comparison of the factual situations in *Isaacs* and the case at bar reveals that appellant herein has not brought forth nearly the abundance of evidence that the plaintiff in *Isaacs* established in an effort to show that the attack by a third person should have been foreseen by the defendant/appellee. Further, in the case closest factually with the instant case, *Walkoviak*, 580 S.W.2d 623, the plaintiff's summary judgment proof was considerably stronger than was that of our appellant. In *Walkoviak*, it was established that within the twelve-month period preceding the attack on the plaintiff in a hotel parking lot, the police were twice called to the hotel due to one robbery and one robbery/assault, of which incidents the hotel had knowledge. *Id.* at 625.

Lastly, we are not unmindful of the recent case of *Allright, Inc. v. Pearson*, 711 S.W.2d 686 (Tex.App.—Houston [1st Dist.], 1986) (opinion on reh'g). This case involved damages sought by a monthly tenant of a multi-story parking garage in downtown Houston when she was robbed at gunpoint and her car stolen by an unknown third person inside the parking structure. In its verdict, the jury found that the owner-lessor failed to provide adequate security on the premises, failed to provide a safe and secure place for the

tenant to park her car, and failed to warn the tenant that the owner would not provide security after a certain time of day, all of which omissions were found to be negligence. The owner asserted alternatively on appeal either: (1) it had no duty to provide security, a safe place to park, or to warn that it provided no security after a certain time of day; or (2) there was no evidence or insufficient evidence to support the jury's verdict.

In overruling (1), above, the court discussed several of the cases mentioned herein—*Walkoviak*, 580 S.W.2d 623, *Morris*, 553 S.W.2d 648, *Eastep*, 546 S.W.2d 116, and *Castillo*, 663 S.W.2d 60—and rejected the owner/lessor's contention that it had no duty to provide security, a safe place to park, or warn its tenants regarding the lack of security. Regarding (2), above, concerning the foreseeability of the incident, the court was confronted with the owner/lessor's assertions that: it had no knowledge of a dangerous condition before the attack, it had seen no previous similar acts on the premises, and therefore it was not foreseeable that there was imminent harm or danger to patrons on the premises. *Allright*, 711 S.W.2d at 692. In overruling these points, the court relied upon the testimony of a certified security consultant who discussed extensively the standard of care required for a multi-story enclosed parking garage. The witness concluded with his opinion that "it was reasonably foreseeable that a person bent on robbery could enter, hide on upper levels, and lay in wait for persons coming in, whether or not such incidents had occurred in the past." *Id.* We find the factual situation of *Allright* distinguishable from the instant case because of the introduction in *Allright* of the testimony of the expert witness regarding the issue of foreseeability.

■ From our review of the totality of the circumstances in the case at bar, we hold that appellant did not present sufficient summary judgment proof to raise a genuine issue of material fact regarding the issue of whether the appellee/lessor, as operator of the parking lot, should have

foreseen that there was a likelihood that third persons were committing or were about to commit intentional actions which would be likely to endanger the safety of a business invitee such as appellant. Appellant's point of error is overruled.

The judgment is affirmed.