Lupe VALDES, Plaintiff,

v.

WAL–MART STORES, INC.,
et al., Defendants.

Civil Action No. H–94–1388.

United States District Court,
S.D. Texas.

Jan. 30, 1997.

Robert D. Kennedy, Houston, TX, Peter Michael Kelly, Houston, TX, for Plaintiff.

Alan N. Magenheim, Houston, TX, for Defendants.

## Opinion on Summary Judgment

HUGHES, District Judge.

### 1. *Introduction.*

Lupe Valdes asserts a cause of action against Wal–Mart for her abduction from a Wal–Mart parking lot. Because Valdes has failed to provide evidence that Wal–Mart owed her a legal duty to protect her against unforeseeable, surprise attacks in its parking lot, Wal–Mart will be granted summary judgment.

### 2. *Background.*

On August 2, 1993, Valdes was shopping at Wal–Mart in Humble, Texas. As Valdes testified: she left the store at 5:30 in the afternoon, returning to her car. The parking lot was crowded and busy. As she walked, she saw nothing suspicious. She could not see her car as she walked toward it because a van parked immediately in front of it obscured her view. Even as she went around the van, she still saw no sign of danger. She heard no footsteps and had no idea from what direction her attacker approached. A man jumped her from behind, putting a knife to her side. He told her not to make a sound and to get in her car. He was not dressed in a way that would have raised suspicion had she seen him. Valdes followed her attacker's orders. She did not scream or try to escape, and she drove slowly out of the Wal–Mart parking lot. The attacker then ordered Valdes to drive ten or fifteen minutes to Deerbrook Mall, where he ordered her to park behind some trash dumpsters in Petsmart's service parking, behind the stores. He raped her and fled.

Valdes claims that Wal–Mart was negligent in failing to provide adequate security and that its lack of security was the cause of her injury.

### 3. *Premises Liability.*

Three elements must be established for the owner of the premises to be liable: (a) Wal–Mart owed Valdes a legal duty; (b) that duty was breached; and (c) as a result of the breach Wal–Mart is liable for the injuries suffered by Valdes. *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 631 (Tex. 1976). Wal–Mart contends that it had no duty to protect Valdes against the unforeseeable criminal conduct of a third party. Valdes insists that the harm she suffered could reasonably have been foreseen in light of the circumstances. The court does not agree. Valdes has failed to establish that Wal–Mart owed her a legal duty to protect her against being criminally attacked by independent third parties beyond what was provided. The summary judgment evidence here does not raise a genuine issue of material fact about whether Wal–Mart knew or reasonably should have anticipated the criminal conduct of Valdes's attacker.

### 4. *The Duty.*

Duty is the threshold. Valdes was a Wal–Mart customer and invitee. As an

invitee, one who enters another's land with the occupier's knowledge and for the mutual benefit of both parties, Valdes was owed a duty of reasonable care. Wal–Mart had to keep the premises reasonably safe and inspect the premises for conditions that would result in injury to its customers. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975).

■■■■ Wal–Mart is not generally obliged to protect Valdes from the criminal activity of a third person not under Wal–Mart's supervision or control. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). Wal–Mart can be charged with knowledge of a dangerous condition on its premises only if a reasonable person should have foreseen a probability that the lack of security would result in injury to customers like Valdes. *Ronk v. Parking Concepts of Texas, Inc.*, 711 S.W.2d 409, 412 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.) (citation omitted).

An exception to this general principle arises where criminal conduct is a foreseeable result of Wal–Mart's negligence. *See LaFleur v. Astrodome–Astrohall Stadium*, 751 S.W.2d 563, 564 (Tex.App.—Houston [1st Dist.] 1988, no writ). The classic illustration of this exception is the *Nixon* case. There, the Texas Supreme Court held that a property owner was liable for the rape of a child on its premises where the owner violated a city ordinance requiring it to keep the doors and windows of its vacant structure closed to prevent unauthorized entry. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex.1985).

■■■■ Texas courts have long ago determined the duty of landowners to their invitees. *See Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 454–55 (Tex.1972) (adopting the RESTATEMENT (SECOND) OF TORTS § 343 (1965)); *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368 (Tex.1963); *McKee v. Patterson*, 153 Tex. 517, 271 S.W.2d 391 (Tex. 1954). Landowners owe no special duty to protect their invitees, only to act reasonably. Whether a condition constitutes a danger is a function of reasonableness. That is, if the ordinarily prudent man could foresee that harm was a likely result of a condition, then it is a danger. *Rosas*, 518 S.W.2d at 537.

### 5. *Proximate Cause.*

■■■■ Wal–Mart is required to take action when, from what it has observed or from its experience, it has reason to believe that a third person's conduct will be dangerous to its invitees. Wal–Mart's duty to provide protection arises from its power of control over the conduct of a third person. *LaFleur*, 751 S.W.2d at 564. Criminal acts are foreseeable in the broad sense, but Wal–Mart does not have a duty to guard against dangers that it cannot reasonably foresee in the light of ordinary or common experience. Wal–Mart has a duty to protect Valdes from actors of which it is or should be aware. For example, liability would attach in the case of an assault from a disgruntled employee who was terminated but loitered on the property because Wal–Mart would be in the best position to be aware of and to protect against that potential danger. "[Wal–Mart] *is not an insurer of* [Valdes's] *safety,* [it] *is ordinarily under no duty to exercise any care until* [it] *knows or has reason to know that the acts of a third person are occurring or are about to occur.*" *Morris v. C.C. Barnette*, 553 S.W.2d 648, 649–50 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.)(quoting the RESTATEMENT (SECOND) OF TORTS § 344 cmt. f (1965)) (emphasis org.).

### 6. *Foreseeability.*

■■■■ The mere existence of a danger is generally insufficient to establish liability unless it is shown to be of a character or a duration that the owner's due care would have discovered it. W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS, § 61, at 428 (5th ed.1984). In *Ronk*, where the plaintiff was similarly accosted in a commercial parking lot, the trial court granted the property owner summary judgment. The decision was affirmed on appeal even where Ms. Ronk offered police records showing seventeen crimes committed on or near the parking lot during the two years before her assault. The appellate court found that the crimes were generally of the character of property crimes—vehicle break-ins and the like—not assaults on customers. *Ronk*, 711 S.W.2d at 416–18. What is required is that

the "injury be of such a *general character as might reasonably have been anticipated* ... and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably [have] been foreseen." *Nixon,* 690 S.W.2d at 551 (quoting *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 124 S.W.2d 847, 849 (1939)) (emphasis org.).

### 7. *Valdes's Evidence.*

■ The most severe crimes known or believed to have been committed on Wal-Mart's property before the attack on Valdes involved theft of personal property. Wal-Mart provided lighting in the parking lot (although the attack occurred in broad daylight), store employees' observations, and access to local law enforcement authorities. Valdes has put forth no evidence to suggest that other circumstances, like the reputation of the area, were known to Wal-Mart management or should have put Wal-Mart on notice that there was an unreasonably high risk that someone shopping at the store would suffer a harm of the general character committed against Valdes.

Valdes's evidence that Wal-Mart had reason to know of dangers that could affect its invitees is a report from the Humble Police Department detailing the crimes that occurred around Wal-Mart's premises in 1993. There were six auto thefts and four vehicle burglaries. Neither the police report nor the accompanying depositions clearly indicate if the incidents occurred in Wal-Mart's parking lot, although at least one vehicle burglary appears to have occurred there. There was one "disturbance" (again undefined), a reckless driving call (undefined), and a shoplifter placed in custody. All of the incidents, including the auto thefts, appear to be part and parcel of the troubles of large commercial establishments and in no way evince negligence. The only crime remotely related to the general nature of Valdes's attack was a sex offense arrest. That incident, however, involved a man who presented a roll of film to an in-store film developer who found indicia of child pornography. These crimes were not of the same character as Valdes's abduction; they do not present evidence to suggest

that there was an unreasonably high risk that someone from the Wal-Mart parking lot would be abducted.

By way of comparison, the successful *Nixon* plaintiffs produced evidence of "a litany of prior crimes, including other violent and assaultive crime, at the [apartment complex], and with deposition testimony that vagrants frequented the area...." *Nixon,* 690 S.W.2d at 551. Prosser describes the sort of cases where, unlike here, a genuine issue of material fact is raised. *See, e.g., Butler v. Acme Markets, Inc.,* 89 N.J. 270, 445 A.2d 1141, 1142 (N.J.1982) (summary judgment was improper where a parking lot assault victim produced evidence that seven muggings had occurred on the business's premises in the past year, five of which occurred in the evenings during the four months preceding the attack); *Foster v. Winston Salem Joint Venture,* 303 N.C. 636, 281 S.E.2d 36 (N.C.1981) (twenty-nine incidents of crime in the parking lot over the previous year); *see generally* PROSSER & KEETON, *supra,* § 61, at 428 n. 16.

Valdes has failed to produce sufficient evidence to raise a genuine issue of material fact on the issue of whether Wal-Mart, as operator of the parking lot, "should have foreseen that there was a likelihood that third persons were committing or were about to commit intentional actions which would be likely to endanger the safety of a business invitee." *Ronk,* 711 S.W.2d at 419. Valdes has failed to produce evidence that the rate and type of crime in the area around Wal-Mart should have put Wal-Mart on notice of potential dangers to its invitees. Six car thefts and four stolen car radios, assuming they occurred in Wal-Mart's parking lot at all, are likely the average level of criminality at a large retail establishment anywhere in greater Houston. These facts do not support negligence by Wal-Mart; they merely reflect that Wal-Mart is not immune from the realities of petty crime.

It would be "patently unfair and unjust to impose [a] vague duty on the shopkeepers and merchants of Texas to exercise reasonable care to discover the sudden criminal acts of unknown and unidentified persons are being done or likely to be done." *Castillo v. Sears, Roebuck & Co.,* 663 S.W.2d 60, 66

(Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Even assuming Wal–Mart were negligent, as long as Wal–Mart did not nor should not have realized the likelihood that a third person was likely to avail himself of the opportunity to commit a crime, then the act of the third person in committing the crime is a *superseding cause* of harm. *See* RESTATEMENT (SECOND) OF TORTS § 448 (1965); *Nixon*, 690 S.W.2d at 549–50. Wal–Mart owes Valdes a legal duty to shield her from foreseeable dangers but not to protect her from dangers against which she is equally capable of foreseeing and guarding.

8. *Private Law Enforcement.*

The duty of a business to its customers arises from its own conduct. The origins of "premises liability" rest in the business's ability to know facts about the land that the customer would be significantly less able to appreciate. This produces a duty to warn of latent defects in the land, including abnormal risks from operations—the owner's bad dog, for instance.

If the law were to expand the business's responsibility beyond its acts and the acts of others whom it selects, like employees, it would in effect be making the business directly liable for the depredations from the general state of criminality; this would require a parallel development of allowing businesses special latitude in the detention of customers and use of force. If business is going to be held responsible for general crime, it will assume the character of private law enforcement. Twisting civil responsibility in a misguided attempt to ameliorate the effects of crime on the occasional victim who happened to be harmed while shopping instead of on the road or at home adds an unquantifiable, arbitrary element to the cost of doing business.

An army of vigilantes fielded by the Retail Merchants Association brings as many societal dangers as the original independent criminals. The expenditures on private security in the United States exceeds $52 billion, far exceeding the $30 billion expended annually on our police force. *See* WILLIAM C. CUNNINGHAM ET AL., U.S., DEP'T OF JUSTICE: NAT'L CRIMINAL REFERENCE SERVICE, PRIVATE SECURITY TRENDS: THE HALLCREST REPORT II (1990) (projecting that, by the year 2000, public expenditures will rise to $44 billion, while those for private services are expected to double to $104 billion); *see also* Joseph N. Boyce, *Landlords Turn to "Commando" Patrols,* WALL ST. J., Sept. 18, 1996, at B1. In addition to being objective evidence of the failure of government in an essential function, this represents a huge cost that depresses productivity.

Assuming that businesses will insure around this risk in sufficient numbers, the transaction costs of fault-based litigation and the presence of nonrational damage components make the premium cost much higher than the cost of an individual's insuring around the risk of injury directly. Of course, most individuals have some form of insurance from the direct costs of an injury, but these usually are limited to medical care and disability, leaving out the unpredictable "benefits" of pain and punishment.

The uncertainness in occurrence, amount, and liability for the intangible effects of third-party willfulness makes the deterrence value of imposition disappear, leaving the common law as a lottery for extraordinary receipt instead of rational compensation.

9. *Conclusion.*

While the incident is reprehensible and while the court empathizes with Valdes's suffering, no evidence suggests that Wal–Mart should have prevented this random act of violence. To hold Wal–Mart liable for acts that can and do occur on every street corner, parking lot, commercial establishment, or even school playground would be pity at the expense of reason.

The court determines whether a legal duty exists based on the facts of the incident. If no duty exists, then no legal liability exists and summary judgment is appropriate. No evidence of probative value establishes that Wal–Mart owed Valdes a legal duty to protect her against the unforeseeable criminal attack of a third party, beyond what was

provided. Wal–Mart will be granted a summary judgment.